[See the last preceding case, and also Buchanan *v.* Smith, *supra*, p. 277.]

RAILWAY COMPANY *v.* PRESCOTT.

1. The proviso in the 21st section of the act of July 4th, 1864, amendatory of the act of July 1st, 1862, to aid the Kansas Pacific Railway in the construction of its road, requiring the prepayment of the cost of surveying, selecting, and conveying the lands, requires the prepayment as to lands granted by the original act, as well as to those granted by the amendatory one.

2. Although lands sold by the United States may be taxed before the government has parted with the legal title by issuing a patent, this principle is to be understood as applicable only to cases where the *right* to the patent is complete, and the equitable title fully vested without anything more to be paid or any act done going to the foundation of the right.

3. Hence, where there has been a large grant (as *ex. gr.*, to a great railroad company to aid in the construction of its road), if prepayment by the

grantee of the cost of surveying, selecting, and conveying the lands granted be required by the statute making the grant, before any of the lands "shall be conveyed," or if the grant contain a proviso that any of the lands granted and not sold by the company within three years after the final completion of the road, shall be liable to be sold to actual settlers under the pre-emption laws, at a price named per acre, the money to be paid to the company—no title (in the first instance unless there be the required prepayment, nor in the second instance at all) vests in the grantee in such a way as that a tax sale will divest the government title.

ERROR to the Supreme Court of Kansas; the case being thus:

An act of Congress passed in 1862, to aid what was afterwards known as the Kansas Pacific Railway Company, in the construction of its road, gave to the said company alternate sections of land on each side of the road, within certain limits, and provided that a patent should issue to the company only as each section of forty miles in length should be completed and accepted by the President. The act also contained a provision that any of these lands not sold by the company within three years after the final completion of the road, should be liable to be sold to actual settlers under the pre-emption laws, at a dollar and a quarter per acre, the money to be paid to the company.

No part of the road having been built in 1864, the original act of 1862 was amended in the year last named, by extending the limits of the grant on each side of the road, and by several other provisions favorable to the company. But by the 21st section of the amendatory statute it was enacted:

"That before any land granted by *this* act shall be conveyed to any company or party entitled thereto under *this* act, there shall first be paid into the Treasury of the United States *the cost of surveying, selecting, and conveying the same by the said company or party in interest* as the titles shall be required by said company, which amount shall, without any further appropriation, . . . be used by the Commissioner of the General Land Office; *for the prosecution of the survey of the public lands along the line of said road, and so from year to year, until the whole shall be completed,* as provided under the provisions of this act."

With these statutes in force, the railway company filed its bill in one of the State courts of Kansas against one Prescott, to quiet the title to a tract of land in Kansas, to which it set up title only by virtue of the provisions of the above-quoted act of Congress of 1862. The defendant set up a tax title for taxes assessed in 1868, with a subsequent sale.

It was admitted on both sides that at the time the lands were assessed the company had completed the section of forty miles of road within which the lands lay, and that the President had accepted them; but that in the present case payment of the costs of surveying, selecting, and conveying had never been made, and that no patent for the land had issued.

The primary question thus was, who was the owner of the land at the time it was assessed and taxed, the United States or the railway company? If the United States, then the land was not subject to State taxation, and the sale was void. If the railway company, it was, and there being in that case no question about the regularity of the sale, the title of the company had been divested.

And this primary question depended on others behind it, to wit:

1st. Whether in order to the procuring of a title into itself, it was necessary for the company to have paid the costs of surveying, selecting, and conveying the land?

2d. Whether such a proviso as existed here, giving to the government a contingent right to offer the lands to actual settlers under the pre-emption laws, did not prevent the lands so vesting in the company as to be liable to be sold for taxes?

The court in which the company's bill was filed, referring to the doctrine as admitted, that a right to a patent was sufficient to subject lands to taxation, considered:

1. That where land is granted to a company for the sole purpose of aiding in the construction of a railroad, and the same was constructed to the approval of government, the company acquired such an interest in the land as rendered it subject to taxation, even though it had not received a

patent, and had not paid the cost of surveying, selecting, and conveying the same.

2. That the provision in a grant by the government " that any of the lands so granted and not sold by the company within three years after the final completion of the road, should be liable to be sold to actual settlers under the preemption laws, at one dollar and a quarter per acre, the money to be paid to the company," reserved no such interest in the government as would render the land not subject to taxation.

It accordingly decreed a dismissal of the bill, and that decree being affirmed in the Supreme Court of the State, the case was brought here by the company for review.

*Mr. I. G. Mohler,* in support of the ruling below:

We submit as a preliminary point, worthy of consideration, whether the 21st section of the amendatory act of 1864,—requiring that before any of the lands granted by " *this* act" should be conveyed to the company the cost of surveying, selecting, and conveying said lands, shall first be paid into the Treasury of the United States by the company, &c.,—is not limited to lands acquired by virtue of *that* act. The language is " this act." Independently of that the original act of 1862 required no such prepayment, and the government cannot disregard a statute which made a grant—an executed contract—and annex new conditions to the grant by a subsequent enactment. If this point is well taken, then as the title here is derived under the original act (the act of 1862), the requisition does not apply to this particular case.

But independently of this:

1. A *legal* title is confessedly unnecessary to give to a State a right to tax. "The *right* to a patent once vested," says this court, in *Stark* v. *Starrs*,* " is equivalent, as respects the government dealing with the public lands, *to a patent issued;* and when issued, it relates back so far as may be

---

* 6 Wallace, 402.

necessary to cut off intervening claimants, *to the inception of the right of the patentee.*" Indeed the whole foundation of the plaintiff's case is a title in himself. He sets one up, and if he has no title, of course, he can maintain no bill to have his title quieted.

2. Now the grant attached, and a good equitable title vested upon the compliance by the company on which the grant itself was made; that is to say, upon the completion of any forty consecutive miles of road, accepted by the President. The 21st section of the amendatory act does not prevent an *equitable* title from vesting. It only declares that " before any land *granted* by this act shall be conveyed," certain small expenses shall be paid. It assumes that the land has been " granted," *i. e.*, that the grant has attached; but withholds a patent, or evidence of *legal* title, till the small expenses mentioned are discharged.

3. The court below was equally right as to the effect of the proviso in the original statute of 1862, opening to actual settlers under the pre-emption laws any of the lands not sold within three years. The effect of an opposite construction would be to render the act nugatory and void, and consequently destroy the grant, for government cannot grant away any portion of the public lands, and yet still own them. This proviso is in the nature of a saving clause in a statute; but a saving clause in a statute, where it is directly repugnant to the purview or body of the act, and cannot stand without rendering the act inconsistent and destructive of itself, is to be rejected.

*Mr. J. P. Ushur, contra, for the plaintiff in error.*

Mr. Justice MILLER delivered the opinion of the court.

The original act of 1862 was amended in 1864 by extending the limits of the grant on each side of the road, and by several other provisions.

A question is raised whether the provision in the twenty-first section of the amendatory statute of 1864—by which it is declared that before any of the lands granted by the act

should be conveyed to the company, the cost of surveying, selecting, and conveying said lands should first be paid into the Treasury of the United States by the company or party in interest—requires this prepayment of the cost of surveying for the lands granted by the original act, or is limited to the lands acquired by the extension of the grant.

Looking to the whole scope of the amended act, and to the provision that the money so paid was to constitute a fund for the continuance and completion of the entire surveys along the road where none had been made, we are of opinion that no patent could rightfully issue in any case until the cost of survey had been paid. None of the road had been built when the amendatory act was passed. No right had vested in any tracts of land, and the power, as well as intent, of Congress to require such payment cannot be contested.

While we recognize the doctrine heretofore laid down by this court, that lands sold by the United States may be taxed before they have parted with the legal title by issuing a patent, it is to be understood as applicable to cases where the *right* to the patent is complete, and the equitable title is fully vested in the party without anything more to be paid, or any act to be done going to the foundation of his right.

The present case does not fall within that principle.

Two important acts remain to be done, the failure to do which may wholly defeat the right of the company to a patent for these lands.

The first is the payment of the costs of surveying. It is admitted that this has never been done in the present case. If the company have such an interest in these lands that they can be sold by the State under her power of taxation, then the title is divested out of the government without its consent, and the right to recover the money expended in the surveys is defeated. As the government retains the legal title until the company or some one interested in the same grant or title shall pay these expenses, the State cannot levy taxes on the land, and under such levy sell and

make a title which might in any event defeat this right of the Federal government reserved in the act by which the inchoate grant was made.

Another important and declared purpose of Congress would be equally defeated by the title thus acquired under the tax sale, if it were valid.

It is wisely provided, that these lands shall not be used by the company as a monopoly of indefinite duration. The policy of the government has been for years to encourage settlement on the public land by the pioneers of emigration, and to this end it has passed many laws for their benefit. This policy not only favors the actual settler, but it is to the interest of those who, by purchase, own adjacent lands, that *all of it* should be open to settlement and cultivation. Looking to this policy, and to the very large quantity of lands granted by this statute to a single corporation, Congress declared that if the company did not sell those lands within a time limited by the act they should then, without further action of the company, or of Congress, be open to the actual settler under the same laws which govern the right of preemption on government lands, and at the same price. Any one who has ever lived in a community where large bodies of lands are withheld from use, or occupation, or from sale except at exorbitant prices, will recognize the value of this provision. It is made for the public good, as well as for that of the actual settler. To permit these lands to pass under a title derived from the State for taxes would certainly defeat this intent of Congress. It makes no difference in the force of the principle, that the money paid by the settler goes to the company. The lands which the act of Congress declares shall be open to pre-emption and sale are withdrawn from pre-emption and sale by a tax title and possession under it, and it is no answer to say that the company which might have paid the taxes gets the price paid by the settler.

For these reasons we think that though the line of the road had been built and approved by the President, so far

as to authorize the company to obtain a patent for this land, if they had paid the cost of survey and the expenses of making the conveyance, yet the neglect to do this and the contingent right of offering the land to actual settlers at the minimum price asked for its lands by the government, forbid the State to embarrass these rights by a sale for taxes.

JUDGMENT REVERSED, and the case remanded to the State court with instructions to proceed in conformity to this opinion.