Remittitur forthwith.

[No. 5391.]

## THE CENTRAL PACIFIC RAILROAD COMPANY v. J. L. HOWARD.

TAXATION OF PUBLIC LANDS. — Under the provisions of the Act of Congress admitting California into the Union, no parcel of the public lands can be taxed by the State until a patent for it has been issued to a private person, or until such private person has become vested with a perfect equity, leaving only the dry legal title in the United States.

IDEM. — If a grant by Congress to a railroad company of public land to aid in its construction contains conditions by which the grant is liable to be defeated, the land cannot be taxed while the conditions are in force and are not fulfilled.

APPEAL from the District Court, Tenth Judicial District, County of Colusa.

This is the second appeal. The principal facts will be found in the former report, 50 Cal. 230. On the second trial it was stipulated that a patent for the land taxed had been issued to the plaintiff by the United States on the 17th of March, 1875; that on the first Monday in March, 1874, one hundred and forty miles of the railroad, from Reading, Tehama County, to the Oregon line, remained to be completed; and that, prior to the first Monday in March, 1874, Commissioners to examine plaintiff's railroad and telegraph line had been appointed by the President, and had examined and accepted the road against all the lands involved in this action, and had made their report to the President, and their fees for such service had been paid by the plaintiff. No evidence other than such stipulated facts was offered by either party. The Court rendered judgment for the defendant, and the plaintiff appealed. The other facts are stated in the opinion.

*S. W. Sanderson*, for the Appellant.

A complete equitable title had not vested in appellant prior to the first Monday in March, 1874, and at that date there remained in the United States something more than the dry legal title, to wit, the reversion or the right to a return of the lands upon failure of the appellant to comply with the conditions of the act of Congress.

"While we recognize the doctrine heretofore laid down by this Court, that lands sold by the United States may be taxed before they have parted with the legal title by issuing a patent, it is to be understood as applicable to cases where the *right* to the patent is *complete*, and the equitable title is *fully* vested in the party without anything more to be paid or any act to be done going to the foundation of his right." (*Railway Company* v. *Prescott*, 16 Wall. 608.)

So it has been held that where the lands have been earned, but the costs of survey have not been paid, and for that reason

no patent has been issued, the equitable title is not complete, and the lands are not subject to taxation. (*Railway Company* v. *Prescott, supra; Railway Company* v. *McShane,* 22 Wall. 444.)

"Land which has belonged to the Federal Government does not become subject to taxation under the laws of the State until the *specific* tract has been, by some act of the Government, segregated from the body of the public lands, and at least an equitable title thereto vested in the grantee." (*Whitney* v. *Gunderson,* 31 Wis. 380, 381; *Parker* v. *Winsor,* 5 Kan. 362–375.)

*Jo Hamilton,* Attorney-General, and *Jackson Hatch,* for the Respondent.

When the Commissioner had been appointed by the President and reported, the plaintiff was entitled to a patent (Act of Congress making the grant, sec. 4) and perfect equitable title to the lands. The United States retained the patent, the mere evidence of title. (30 Cal. 648; 6 Wall. 402; 50 Cal. 621; 16 Wall. 603; 22 Wall. 444.)

In such cases as this, evil results would follow the recognition of any other doctrine. If lands in the same condition in which the lands named in the complaint were found, at the time of the assessment mentioned, were held to be exempt from State taxation, as falling within the prohibitory clause of the Act of Admission, property-holders might delay for years demanding the patent for their lands, with the sole purpose in view of escaping the burdens of taxation. (30 Cal. 647.)

The right to a patent once vested, says Justice Field, in 6 Wall. 418, is treated by the Government, when dealing with the public lands, as equivalent to a patent issued.

The State, in taxing the land, merely taxes the title of the plaintiff, and if that fails, the United States is not injured.

By the Court, McKINSTRY, J.:

On the former appeal it was held that the lands described in the complaint were not subject to State taxation until the plaintiff had received or was entitled to a patent for them.

The Act admitting the State of California into the Union contains the following provision : ᛫

"That the said State of California is admitted into the Union upon the express condition that the people of said State, through their Legislature, or otherwise, *shall never interfere with the primary disposal of the public lands within its limits, and shall pass no law and do no act whereby the title of the United States shall be* IMPAIRED *or* QUESTIONED ; and they shall never *levy any tax*, or *assessment* of *any description whatever*, upon the public domain of the United States." ᛫ ᛫ ᛫ ᛫ ᛫ ᛫ ᛫ (1 Hittell, art. 242.)

Under this provision no parcel of the "public lands" can be taxed until a patent for it has issued to a private person, or until such private person has become vested with a "perfect equity"—leaving the dry legal title in the United States.    While lands sold by the United States may be taxed before that Government has parted with the legal title by issuing the patent, the doctrine is to be understood as applicable to cases where the *right* to the patent is complete, and the equitable title is fully vested in the party, without anything more to be paid, or any act to be done, going to the foundation of his right.    (*Railway Co.* v. *Prescott*, 16 Wall. 608.)

The sixth section of the Act of Congress granting land to the predecessors of plaintiff required that the railroad company or companies should complete the whole road on or before the first day of July, 1875 ; and by the eighth section it was provided that if the company or companies should fail to comply with the condition, by not completing the road, as required in the sixth section, all lands not conveyed by patents to said company or companies at the date of the failure should revert to the United States.

At the date of the assessment, the lands assessed were subject to the condition, that if the patent should not be issued prior to the 1st day of July, 1875, and the whole road should not be finished at that date, the plaintiff would cease to have any equitable claim or title.    It cannot be said, therefore, that its equity was perfect when the assessments were levied.

But the claim of the plaintiff to the particular parcels assessed

was also subject to be defeated by private persons, at least at any time before the patent was issued. The second section of the act referred to, being the section containing the grant, has the following provisos: " *Provided*, that *bona fide* and actual settlers under the pre-emption laws of the United States may, after due proof of settlement and occupation, as now provided by law, purchase the same at the price fixed for said lands at the date of such settlement, improvement, and occupation; and provided, also, that settlers under the Homestead Act, who comply with the terms and requirements of said act, shall be entitled, *within the limits of said grant*, to patents for an amount not exceeding eighty acres of the land so reserved by the United States, anything in this act to the contrary notwithstanding."

It is clear that while contests are pending between the plaintiff and any claimants under the Pre-emption or Homestead Acts, it is the duty of the officers of the United States to refuse to issue patents for the lands so contested to the plaintiff, and the right of the latter to patents therefor is not perfect and complete, within the meaning of the language of the Supreme Court of the United States in *Railway Company* v. *Prescott.* The fact that the plaintiff would be entitled to other lands in lieu of those awarded to pre-emptioners or claimants under the Homestead Act but strengthens the proposition that it had not acquired a right to patents for the particular parcels assessed.

Before the patent has actually issued to the plaintiff, its retention of the land is subject to both the contingencies above mentioned, and we cannot assume that neither of them will occur.

Judgment reversed, and cause remanded for a new trial.

Neither Mr. Justice RHODES nor Mr. Justice NILES expressed an opinion.