[S. F. No. 4668.    Department One.—April 28, 1908.]

[Affirmed in Bank on Rehearing, October 17, 1908.]

ANNIE BURKE, Appellant, v. JAMES MAGUIRE, Administrator of the Estate of Bridget McDermott, Deceased, Respondent.

ESTATES OF DECEASED PERSONS—ACTIONS BY DISTRIBUTEES OF HUSBAND'S ESTATE AGAINST ESTATE OF DECEASED EXECUTRIX—TRUST FUND NOT TRACED—PRESENTATION OF CLAIM ESSENTIAL.—In several actions by distributees who were legatees under the will of a deceased husband, against the estate of the deceased wife who was executrix of the will of the husband, by the terms of which a fund was devised to trustees, the income of which was to be paid to the wife during her life, and the principal upon her death to be distributed among the legatees,—it appearing that the trustees had failed to qualify, and that the whole fund was held by the wife as executrix,—when no attempt is made in any of the actions to follow specific trust property, but each of the legatees is seeking only a money judgment against the estate of the deceased wife, a presentation of the claim of each of them against her estate is essential to the cause of action stated in second count of the complaint, involving such demand.

ID.—DECISION UPON DEMURRER.—REVIEW UPON APPEAL—APPELLATE COURT NOT LIMITED TO RULING IN SUPERIOR COURT.—In reviewing upon appeal an order sustaining a demurrer to a complaint, the appellate court is not limited to the ground of demurrer sustained by the court below, but if the complaint is insufficient upon any ground properly specified in the demurrer, the order must be sustained, though the lower court may have deemed it sufficient in that respect, and may in its order have declared it defective only in some particular in which we hold it to be good.

ID.—RIGHTS OF DEMURRING PARTY.—The defendant demurring to the complaint is entitled to the decision of the appellate court on all questions presented by the demurrer, and necessary to the decision made.

ID.—CAUSE OF ACTION AGAINST ESTATE SOUNDING IN CONTRACT—FAILURE TO PRESENT CLAIM A GROUND OF GENERAL DEMURRER.—A com-

plaint against an estate, stating a cause of action sounding in contract, which does not aver that a claim for the cause of action has been presented to the administrator, is subject to a general demurrer on the ground that it fails to state a cause of action against the estate.

ID.—GROUND OF GENERAL DEMURRER NOT MATTER IN ABATEMENT TO BE SPECIALLY PLEADED—SINGLE EXCEPTION TO BAR OF STATUTE.— The ground of general demurrer that the complaint in some count thereof does not state facts sufficient to constitute a cause of action, searches the whole pleading or the part thereof demurred to, and does not raise any matter in abatement requiring particularization, with the single exception that, in order that the defendant may avail himself of the personal privilege of the bar of the statute of limitations appearing upon the face of the complaint, he must specify it as a particular ground of the general demurrer, or it is deemed waived.

ID.—FAILURE TO ALLEGE PRESENTATION OF CLAIM—PERSONAL PRIVILEGE NOT INVOLVED.—The failure to allege the presentation of a claim to the administrator of an estate does not show a case coming within the reason of the exception made as to the statute of limitations. The administrator acts in a trust capacity, and it is his duty to insist upon a compliance with the plain provision of section 1500 of the Code of Civil Procedure, in order to protect the estate against unnecessary litigation. Its benefits to the estate are not personal to him, and it is not his personal privilege to waive them.

ID.—RULE OF PLEADING AS TO PRESENTATION OF CLAIM—GENERAL DE-MURRER—RULES AS TO WAIVER UPON APPEAL.—The rule of pleading that the failure to present a claim which must be presented to the administrator of a deceased person, is available upon a general demurrer having been the rule in this state for many years, that objection is available upon appeal, when involved in such demurrer, notwithstanding the settled exception to the general rule upon appeal that the ground of general demurrer is not waived, that if the failure to present a claim was not urged in any manner in the court below, it must be deemed waived.

ID.—ARGUMENT IN COURT BELOW—SILENCE OF RECORD.—When there is nothing in the record to show what points of general demurrer were argued in the court below, and the opinion of the court is silent thereupon, it is not established that the failure to present a claim against the estate, involved in the general demurrer, was not urged in the court below.

ID.—JURISDICTION OF SUPERIOR COURT—BOTH COUNTS INCLUDED IN SUM DEMANDED.—When one count of the complaint involves a sum less than three hundred dollars, but the amount included in both counts far exceeds three hundred dollars and the amount demanded includes both counts, the jurisdiction of the superior court is sufficiently shown.

ID.—INSUFFICIENT COUNT—CONCEALMENT OF PROPERTY BY EXECUTRIX—
BELATED DISCOVERY—MATERIAL FACTS NOT STATED.—A first count
in the complaint, seeking a share in funds of the deceased husband
alleged to have been concealed by the deceased wife as executrix,
and not included in the inventory made by her as executrix fourteen
years before suit, to the extent of forty thousand dollars in money
and ten thousand dollars in notes and mortgages, alleged not to have
been discovered until after her death, but not alleging any facts and
circumstances sufficient to show that the means of knowledge last
availed of were not at all times open to the plaintiff, or that he did
not know all the resources of the estate or that the husband's will
disposed of property largely in excess of the amount inventoried,
and not alleging inquiry as to facts which plaintiff must be pre-
sumed to know, nor that plaintiff believed and relied upon the false
inventory and was thereby led to forego further inquiry, nor that the
facts might not have been discovered with reasonable diligence
within three years after the fraud was perpetrated or more than three
years before suit, is insufficient to state a cause of action, and a
general demurrer thereto was properly sustained.

ID.—SCRUTINY OF EQUITY—LAPSE OF TIME AND DEATH OF PARTIES.—
After a great lapse of time, and the death of the original parties,
equity, for the peace of society, scrutinizes bills for relief. It is
not sufficient to allege ignorance at one time and discovery at
another, but facts and circumstances must be stated sufficient to
satisfy the chancellor that plaintiffs have not neglected and slept
upon their rights.

ID.—SPECIAL DEMURRER FOR UNCERTAINTY—DESCRIPTION OF NOTES AND
MORTGAGES.—If no reasonable excuse is given for inability particu-
larly to describe the notes and mortgages alleged to have been dis-
covered, and uncertainty appears in such description, a special de-
murrer on that ground was properly sustained.

ID.—COMPLAINT NOT SUFFICIENT TO ENFORCE TRUST IN EQUITY—BREACH
NOT ALLEGED.—The second count in the complaint for a judgment
against the estate of the deceased executrix cannot be held good as
a complaint in equity to follow a trust fund and obtain an order
on the administrator of her estate to turn over to the plaintiff the
share of the trust fund claimed by plaintiff, when no breach of trust
is alleged in the complaint either by the executrix in her lifetime or
by her administrator.

ID.—DUTY OF EXECUTRIX TO KEEP FUND.—The trust provided for in
the will having failed by the neglect of the trustees to qualify, and
no trustees having been appointed in their stead, the executrix could
not pay the money to the trustees, and under the circumstances it
was her duty as executrix to keep it.

ID.—MINGLING OF TRUST FUND NOT PRESUMED.—It cannot be presumed
that the executrix mingled the trust fund with her estate, or con-
verted it to her own use, when neither of these facts is alleged in
the complaint.

ID.—PRESUMPTION OF DISCHARGE OF DUTY.—It is presumed that the executrix did her duty as trustee, and kept the trust fund separate, and that, if it was invested, it was done in such a manner as to show on its face that it was held in trust.

ID.—ACTION OF DEBT BY TRUSTEE—POSSIBLE RIGHT OF BENEFICIARIES.— If the trustees named in the will had qualified, and upon their demand the executrix had refused to pay the fund to them, they could, under section 1666 of the Code of Civil Procedure, have maintained an action of debt against her for the fund. Perhaps, after her death, the beneficiaries under the will could claim the same right, under that section, and sue for the fund as a debt, although not converted by her to her own use.

ID.—ACTION IN EQUITY—SHOWING REQUIRED.—No action in equity can be maintained by the beneficiaries of the deceased husband's estate, to have the trust fund declared a lien on the estate of his deceased executrix, and to have it or its equivalent paid over to them as such beneficiaries, without showing that the trust fund is mingled with some part of her estate, into which it may be traced.

ID.—CONDITIONS OF CAUSE OF ACTION AT LAW.—In the absence of averments of a conversion, or some other breach of trust by the executrix, no action at law can be maintained by the beneficiaries of the husband's estate against the estate of the deceased executrix without averring the presentation of a claim against her estate.

ID.—CAUSE OF ACTION NOT STATED AGAINST ADMINISTRATOR—POSSESSION OF TRUST FUND NOT SHOWN.—No cause of action is stated against the administrator of the deceased executrix when it is not averred that the fund, or any note or chose in action representing it, or any property into which it had been converted, ever came into his possession.

ID.—TRUST FUND HELD BY EXECUTRIX NO PART OF HER ESTATE.—A trust fund held by the deceased as executrix of the deceased husband's estate, and presumed to be segregated by her from her own estate, is no part of her estate, and the administrator did not succeed to her duties as executrix of the will of her deceased husband, and he had no authority to act in that behalf.

ID.—EFFECT OF DEATH OF EXECUTRIX—CESSATION OF TRUST—RIGHTS OF BENEFICIARIES.—Upon the death of the executrix, the trust in the fund held by her ceased to be active, and nothing remained to be done under it but for the beneficiaries to take possession of the fund.

ID.—EFFECT OF POSSESSION BY ADMINISTRATOR OF PROPERTY NOT PART OF ESTATE—DEMAND REQUIRED BEFORE SUIT.—If, as matter of fact, the administrator has become the custodian of a fund which is no part of the estate of the deceased executrix, and which is not claimed to be any part thereof, no action will lie against him, without a previous demand of the fund before suit.

ID. — ADMINISTRATOR NOT PERSONALLY SUED — JUDGMENT SOUGHT AGAINST ESTATE.—When the administrator is not personally sued, and is only made a party in his official capacity as administrator, and the judgment prayed for is against the estate of the deceased executrix, to be paid in due course of administration, and no facts are pleaded authorizing a different cause of action in equity to enforce a trust against the administrator individually in the interests of justice, as successor in the custody of the trust fund, the complaint cannot be held good on that theory.

APPEALS from judgments of the Superior Court of the City and County of San Francisco. Thomas F. Graham, Judge.

The main facts are stated in the opinion of the court, rendered in Department One, April 28, 1908.

Sullivan & Sullivan, and Theo. J. Roche, for Appellant.

John J. Barrett, George C. Ross, and Ross & Ross, for Respondent.

The following opinion was rendered in Department One, April 28, 1908:—

SHAW, J.—This is one of nine appeals taken in nine actions against the defendant, each by a different plaintiff. The several plaintiffs are legatees under the will of Hugh McDermott, deceased, and distributees under the final distribution of his estate. Bridget McDermott was the executrix of his estate and each plaintiff is herein suing the administrator of her estate to recover the share of the legacy to which he is entitled under the distribution. The lower court, in each case, sustained a demurrer to the complaint and gave judgment for the defendant, from which plaintiff appeals. The allegations are the same in each case and by order of this court, upon the stipulation of the parties, the nine appeals have been consolidated and are presented to this court for decision upon the transcript of the record in the case wherein Annie Burke is the plaintiff.

Hugh McDermott died on January 9, 1890. His will bequeathed to these plaintiffs each a separate money legacy, amounting in all to the sum of $16,700. This sum was to be delivered to two persons named as trustees to be kept by them

during the life of his wife Bridget McDermott, the interest and income therefrom to be paid to her during her lifetime, and, upon her death, the fund to be by them distributed to the legatees thereof. The trustees were to qualify by giving bonds. The will was duly probated, Bridget McDermott qualified as executrix, the usual proceedings in administration were had and a final distribution was ordered in accordance with the will. According to the final account, as settled, the amount applicable to the payment of all these legacies, after paying debts and preferred legacies, was only $1593.66. This sum the executrix was directed by the decree to pay to the trustees, upon their giving the bonds as required. The trustees did not qualify by giving the required bonds. The decree of distribution was made on April 7, 1894. Bridget McDermott died December 30, 1902. These actions were begun June 27, 1904.

1. The second count of the complaint alleges the facts aforesaid, avers that the money distributed to the trustees was never paid to them, but that Bridget McDermott, until her death, retained possession thereof as executrix of Hugh McDermott's estate, and that plaintiff is entitled to a part of the fund of $1593.66 applicable to the legacies and asks judgment against the estate of Bridget McDermott for the share due plaintiff.

The order sustaining the demurrer states that "the same is hereby sustained upon the grounds as heretofore stated in the opinion on file herein." It is claimed that the order cannot be affirmed, unless this court agrees with the lower court in the opinion referred to ·in the order. We do not so understand the law. . If the complaint is insufficient upon any ground properly specified in the demurrer, the order must be sustained, although the lower court may have considered it sufficient in that respect and may in its order have declared it defective only in some particular in which we hold it to be good. The defendant is entitled to the decision of this court on all questions presented by the demurrer and necessary to the decision made. (*Wilson* v. *Carter,* 117 Cal. 53, [48 Pac. 983]; *Wakeham* v. *Barker,* 82 Cal. 50, [22 Pac. 1131]; *White* v. *Merrill,* 82 Cal. 14, [22 Pac. 1149].)

The second count does not aver that any claim for the demand sued on therein was ever presented for allowance

against the estate of Bridget McDermott. A money judgment only is demanded. No attempt is made to follow specific trust property. The demand is clearly founded upon contract. The Code of Civil Procedure requires that such demands be presented to the administrator of the estate for allowance (sec. 1493), and provides that no action can be maintained thereon, unless a claim therefor has been so presented before the action is begun (sec. 1500). A complaint against an estate, stating a cause of action sounding in contract, which does not aver that a claim for the cause of action sued on has been thus presented to the administrator, fails to state a cause of action against the estate. (*Moore* v. *Steele,* 149 Cal. 304, [86 Pac. 693]; *Morrow* v. *Barker,* 119 Cal. 67, [51 Pac. 12]; *Humboldt Soc.* v. *Burnham,* 111 Cal. 345, [43 Pac. 971]; *McGrath* v. *Carroll,* 110 Cal. 79, [42 Pac. 466]; *Lichtenberg* v. *McGlynn,* 105 Cal. 45, [38 Pac. 541]; *Ellison* v. *Halleck,* 6 Cal. 393.) This count is, therefore, fatally deficient for this reason.

It is urged that this point cannot be considered in this court on appeal because it is in the nature of matter in abatement, and the general demurrer merely states that this count "does not state facts sufficient to constitute a cause of action against said defendant," without specifying this omission as the particular point in which it was claimed to be lacking. It was decided in this state very soon after the adoption of the Practice Act, which in this respect is the same as the present Code of Civil Procedure, that a general demurrer need not specify the particulars wherein the complaint failed to state facts constituting a cause of action, but that, if couched in the language above quoted, it would search the entire complaint, or the count thereof to which it was directed, for any and every failure to state a material fact. (*Ellison* v. *Halleck,* 6 Cal. 393; *Williamson* v. *Blattan,* 9 Cal. 501.) Afterwards, in *Brown* v. *Martin,* 25 Cal. 91, an exception to this rule was made in cases where the bar of the statute of limitations appeared on the face of the complaint. Apparently, though not expressly, applying the familiar common law rule that the benefit of this statute is a personal privilege which is waived unless specially pleaded, the court, in that case, held that a general demurrer which did not specify the bar of the statute as the defect relied on was insufficient to present that objection. This

precedent has been uniformly followed ever since, so far as
the statute of limitations is concerned. The opinion in the
case also attempted to establish and recommended the future
observance of a rule to the effect that a general demurrer must
always specify the particular facts which it is claimed are not
alleged, else it will be disregarded. This attempt proved
futile, and in *Kent* v. *Snyder*, 30 Cal. 666, the rule suggested
was repudiated and it was declared that no specifications were
necessary in a general demurrer, except where the benefit of a
personal privilege, such as the statute of limitations, was
claimed. Thenceforward, this has been the accepted rule of
pleading, and, so far as we are aware, the statute of lim-
itations is the only personal privilege which has been declared
to fall within the exception.

The failure to allege the presentation of a claim does not
come within the reason of the exception. The presentation is
required in order to protect the estate against unnecessary
litigation, the administrator acts in a trust capacity, and it is
his duty to insist upon a compliance with the plain provisions
of section 1500. Its benefits are not personal to him and it is
not his personal privilege to waive them. It has been for many
years uniformly considered that this objection was properly
presented by a general demurrer not specifying any particu-
lars. (See *Moore* v. *Steele*, 149 Cal. 304, [86 Pac. 693], and
the other cases cited.)

In some cases, where no demurrer was filed, it has been
held that the objection could not be raised on appeal, but must
be first presented in some manner in the trial court. (*Hentch*
v. *Porter*, 10 Cal. 555; *Peterson* v. *Hornblower*, 33 Cal. 278.)

It is difficult to sustain the distinction attempted to be made
in these cases, but they have not been questioned. In other
cases cited by appellant there was either a defective allega-
tion of the presentation of a claim, which this court held to be
sufficient in the absence of a demurrer for uncertainty (*Chase*
v. *Evoy*, 58 Cal. 353; *Wise* v. *Hogan*, 77 Cal. 184, [19 Pac.
183]; *Guerian* v. *Joyce*, 133 Cal. 405, [65 Pac. 972]), or a
presentation made after the action was begun and which was
duly alleged and no demurrer was filed (*Dennery* v. *Wood-
ward*, 124 Cal. 574, [57 Pac. 571]), or the defendant had died
after the suit was begun and before trial and the court held
that the objection that there was a failure on the trial to prove

presentation of a claim to the defendant's estate, as required by section 1502 of the Code of Civil Procedure, in such cases, is waived, if not made in the court below. (*Coleman* v. *Woodworth,* 28 Cal. 568; *Bank* v. *Howland,* 42 Cal. 134; *Drake* v. *Foster,* 52 Cal. 227; *Preston* v. *Knapp,* 85 Cal. 559, [24 Pac. 811].) None of these cases is in point here.

The appellant argues that the record shows that this point was not presented in the court below because it is not mentioned in the opinion of that court referred to in the order sustaining the demurrer. This does not prove the proposition. The opinion does not purport to state what points were presented in argument.

The share of the $1,593.66 due the respective plaintiffs is less than one hundred dollars, except in two of the cases in which it amounts to $477.14. The demurrer on the ground that the court has no jurisdiction would be well taken but for the circumstance that the amount demanded was fixed to include both counts, and exceeds three hundred dollars in each of the nine cases. (Const., art. VI, sec. 5.)

2. The first count of the complaint alleges, that, upon the death of Hugh McDermott there came into the possession of his widow, Bridget McDermott, some forty thousand dollars in money and ten thousand dollars in notes and mortgages, belonging to his estate, and which belonged to him in his lifetime; that she did not list this property in the inventory of the estate filed by her as his executrix, and did not mention it in her accounts filed, nor account for it in any way, but concealed it from the court and from the plaintiff and other legatees, and falsely represented to the court, and to said parties, that Hugh McDermott, at his death, did not own any property, and none had come to her possession or knowledge except that listed in the inventory and mentioned in her accounts; that the plaintiff, the trustees named, and the other legatees, did not know or discover that Hugh McDermott was the owner of said concealed property, or that Bridget had come into possession of it upon his death, or had concealed its existence from them, or that her statements that the inventory and accounts described all his property and that none other had come to her possession or knowledge, were false, until after her death. That plaintiff was then, for the first time, informed of these facts, "by reason of the administration proceedings"

upon her estate "wherein it appeared" that she came into possession of said concealed property belonging to said Hugh McDermott, upon his death, and retained possession thereof until her death.

This count alleges that the trustees failed to qualify, but it does not aver that the $1,593.66, ordered distributed to said trustees, was not in fact paid to them, or that the plaintiff has not received her share thereof. In this count a recovery is sought only for so much of the concealed property as will be sufficient to pay the balance of plaintiff's legacy, after deducting her share of the $1,593.66, distributed to the trustees. It alleges the due presentation of a claim for this balance.

The inventory, containing the alleged false list, was filed on October 18, 1890, nearly fourteen years before these actions were begun. It is not alleged that the plaintiff did not know the contents of the inventory. It was a statement of record that the property therein described comprised the entire estate of Hugh McDermott. The several accounts and the petition for distribution were reiterations of the same statement. It is not averred that Bridget McDermott made the alleged false statements to the plaintiff in any other manner, or at any other time or place, than in these documents.

Concerning such belated discoveries this court has said: "After the lapse of so much time, and after the death of the original parties, equity, for the peace of society, scrutinizes with great particularity such bills as this, and it is not satisfied to retain one unless the fullest possible credible showing is made by the applicants for relief. It is not sufficient, therefore, to allege ignorance at one time and discovery at another. The facts and circumstances must themselves be pleaded in order that the court may determine whether the sources of knowledge at last availed of were not at all times open to plaintiffs, whether they were negligently overlooked, whether other circumstances should not earlier have put plaintiff upon discovery, what was the nature of the concealment practiced, whether it consisted in mere silence, or was accompanied by active misrepresentation and fraudulent deception, . . . all are questions, which, upon the demand of the demurrer, should be answered by the bill in order that the chancellor, to whose conscience, in the first instance, the equity of the bill is addressed, should satisfy himself that plaintiffs have not

neglected or slept upon their rights." (*Robertson* **v.** *Burrell,*
110 Cal. 578, [42 Pac. 1086].)

The complaints in these cases leave the court uninformed
upon some of the points as to which disclosure is declared to
be necessary. They do not state where the plaintiff lived, nor
whether or not they were acquainted with Hugh McDermott,
in his lifetime, or were familiar with his property and posses-
sions, or were so situated that they had no knowledge thereof.
The will, which is annexed to and made part of the complaint,
indicates, by its terms, that Hugh McDermott was not ac-
quainted with some of the plaintiffs, and that some of them,
at the time it was made, lived out of the state. But these are
mere inferences and they cannot take the place of the positive
allegations of fact which the law requires the plaintiff to make
in order to show that his discovery or imputed knowledge of
the fraud was within the period of three years before the ac-
tion was begun. It is not stated that plaintiffs did not know of
the actual existence of the forty thousand dollars in money
and ten thousand dollars in mortgages. The latter, it may be
presumed, were of record. It does not so appear in the com-
plaints, nor do they state in what county the mortgaged prop-
erty was situated, or explain why the plaintiffs still remain
entirely ignorant of everything concerning them excepting
their aggregate amount. By the provisions of the will other
legacies were preferred, and the plaintiff's legacies could not
have been paid in full unless Hugh McDermott had possessed
an estate worth more than eighty thousand dollars. His will
was made December 7, 1889, a month and two days before his
death. The petition for its probate, alleging that his entire
estate consisted of certain notes and mortgages worth twelve
thousand dollars and certain real estate worth six thousand
dollars, was filed March 15, 1890, some two months later, and
the inventory and appraisement showing its value to be only
$18,728.58 was filed in the following October. We must as-
sume that plaintiffs knew of these facts. They were at least
sufficient to suggest some inquiry concerning the reasons for
the great disparity between the bountiful provisions of the will
and the meager ability of the testator to respond to its de-
mands. No inquiry whatever was made.

It is not stated that plaintiffs believed the alleged false rep-
resentations concerning the estate, nor that it was in reliance

thereon that they suffered fourteen years to elapse without the least diligence to learn the reason for the insufficiency of the estate to pay the liberal legacies provided in a will made so shortly before the death of the testator. It is the general rule that one who claims that his conduct has been influenced to his prejudice by alleged false statements of another, must allege that he believed the false statements to be true and relied on them in his subsequent action relating to the subject thereof. (14 Am. & Eng. Ency. of Law, 106, 111; 8 Ency. of Plead. & Prac. 906; 20 Cyc. 39; *Estep* v. *Armstrong,* 69 Cal. 536, [11 Pac. 132]; *Colton* v. *Stanford,* 82 Cal. 378, 383, [16 Am. St. Rep. 137, 23 Pac. 16].)

The first count shows on its face that the action is barred by the provisions of section 338 of the Code of Civil Procedure, unless brought within the exception of subdivision 4 thereof. We are of the opinion that it does not aver sufficient diligence to excuse the failure to discover the alleged fraud within three years after it was perpetrated, or before the death of Bridget McDermott; that it does not sufficiently disclose the facts and circumstances surrounding the parties at the time the concealment is alleged to have taken place; and that it is insufficient because it does not aver that they believed the alleged false statement and were thereby led to forego further inquiry.

It is also defective in that it is uncertain as to the description of the property alleged to have been concealed, particularly of the notes and mortgages. A special demurrer presents this objection. No reasonable excuse is given for the alleged inability to give a more particular description of property of this character "discovered" in the manner alleged.

The demurrer was properly sustained.

In each of the appeals the judgment of the superior court is affirmed.

Angellotti, J., and Sloss, J., concurred.

After the rendition of the foregoing opinion a hearing in Bank was granted, and the following is the opinion rendered on rehearing in Bank, October 17, 1908:—

SHAW, J.—A rehearing was granted in order to consider more fully the question whether or not the second count of the complaint, although insufficient as a complaint on a debt

against the estate of Bridget McDermott, could be held good as a complaint in equity to follow a trust fund and obtain an order upon Maguire, either personally, or as administrator, to pay over to plaintiff the fund claimed by her, or her share of it, as money belonging to her which has come into his possession or control.

The complaint is clearly insufficient for that purpose. The general rule as to charging trustees is thus stated: "The general rule is that a plaintiff who seeks to charge a trustee with a breach of trust is bound to state a clear case upon his bill. Therefore acts of a trustee which may, or may not, be breaches of trust must be so alleged that they necessarily appear to be breaches, or a demurrer will be sustained. The presumption is in favor of the performance of his duty by the trustee; the plaintiff must therefore allege and prove affirmatively a breach of the trust." (2 Perry on Trusts, sec. 890.) "All the facts necessary to rebut these presumptions must be specifically averred." (2 Beach on Trusts, sec. 756.)

No breach of trust, either by Bridget McDermott in her lifetime, or by her administrator, is shown. At the time of the distribution of the estate of her husband, Hugh McDermott, she had on hand the sum of $1593.66 which she was directed by the decree to pay to Byrnes and Maloney as trustees, upon the execution by them of a sufficient bond, the said sum to be by them kept during her lifetime and the income thereof paid to her, and at her death the principal to be paid to the several plaintiffs in these actions, as provided in Hugh McDermott's will. Byrnes and Maloney never qualified as such trustees, nor did other trustees in their stead, and hence Bridget McDermott could not pay the money to them, but was obliged to keep it herself. It is alleged that until the date of her death, some eight years afterward, she "retained possession thereof as executrix" of her said husband's will. Under the circumstances, this was her duty. It is not alleged that it was mingled with her own property, or converted to her own use. Neither of these facts can be presumed. Being entitled to the income from it, she had the right to invest it so that it would produce an income, using due care to invest safely. It is presumed that she did her duty as trustee of the fund and, hence, we must assume that she kept it separate from her own property and that, if she invested it, she did so in such manner as to

show on its face that it was not her own, but belonged to others and was held by her in trust for them. If the trustees mentioned in the will had qualified and upon their demand she had refused to pay over the fund to them, they could, under the provisions of section 1666 of the Code of Civil Procedure have maintained an action against her to recover it as a debt. Perhaps, after her death, the beneficiaries could claim the same right under that section and could demand the sum of her administrator and sue for the same as a debt of her estate, although it had not been converted by her to her own use. It seems perfectly clear that the complaint was framed on this theory and that the omission in the second count to aver a presentation of the claim to the administrator was accidental. But however this may be, it is certain that without a showing that the trust fund is mingled with some part of her estate into which it can be traced, no action in equity can be maintained to have it declared a lien thereon and to have it or its equivalent paid over to the beneficiaries, and that without averments of a conversion, or some other breach of trust by her, no action at law can be sustained against her estate without averring a presentation of a claim therefor.

With respect to the liability of the administrator, personally, the complaint is equally defective. It is not averred that the fund, or any note, mortgage, or chose in action representing it, or any property into which it had been converted, ever came into his possession. It was no part of her estate and, being segregated from the estate, as we must assume, it was not his duty to take possession of it as administrator of her estate. It was held by her as executrix of the estate of Hugh McDermott; he did not succeed to her rights or duties as executrix of that estate, and he had no authority to act in that behalf. Our law so provides. (Code Civ. Proc., sec. 1353; *Chevassus* v. *Burr*, 134 Cal. 434, [66 Pac. 568]; *Bush* v. *Lindsey*, 44 Cal. 124.) Upon her death the trust ceased to be active and nothing remained to be done under it except for the beneficiaries to take possession of the fund. Under these circumstances, if the administrator of her estate took possession of it he would have no title or right in it, but would be a mere custodian or depositary, to keep it until the persons entitled applied for it and thereupon to deliver it to them. His duty with respect to it in that case would be the same as with respect to any

other property of another which might come lawfully into his possession without title or right to keep it against the rightful owner. If there is any presumption that he did take possession of it, which we do not say, it would be a presumption of fact, not of law, and if the plaintiff desired to rely upon it as a fact necessary to complete the statement of a cause of action against the administrator personally, the rules of pleading require that she should aver the fact. Furthermore, one lawfully in possession of property which he does not claim and which he has not converted to his own use, but is holding for the rightful owner with the intent to deliver it to him on demand, is entitled to an opportunity to comply with his duty before being subjected to a suit to recover it,—that is, to a demand for its delivery. Such demand, in such a case, is a condition precedent to the right to maintain an action to follow the specific property, or recover it, and it must be alleged and proven. (13 Cyc. 806; 1 Cyc. 408, 694; *Bushnell* v. *McCauley,* 7 Cal. 421; *Campbell* v. *Jones,* 38 Cal. 507.)

The case of *Lathrop* v. *Bampton,* 31 Cal. 17, [89 Am. Dec. 141], is almost parallel. The complaint there did not allege the presentation of a claim and hence was held insufficient as a complaint on a debt against the estate. A rehearing was granted to consider again whether or not it could be upheld as a complaint to enforce a trust. The court then said: "The defendant cannot be charged and held to account as trustee, except upon the averment that he has come into possession of the trust fund, or its substitute. If, at the time of his death, the defendant's testator was in possession of the trust fund, or other property into which he may have converted it, *and such fund or other property had come into the possession of the defendant,* he would have held it upon the same terms as his testator held it. . . . Such fund would have constituted no part of the testator's assets, and the defendant would not have held it in his capacity as executor, but in his capacity as succeeding trustee to the plaintiff's ward, and might have been compelled to account as such." (Italics ours.) (See, also, *Rowland* v. *Madden,* 72 Cal. 17, [12 Pac. 226, 870].)

It is suggested in the petition for rehearing that the case of *Elizalde* v. *Elizalde,* 137 Cal. 634, [66 Pac. 369, 70 Pac. 861], is authority for the claim that the complaint herein states a cause of action in equity to enforce a trust. That case is clear-

ly distinguished from the present case by the material fact, there distinctly alleged, proven, and found, that the trust fund in controversy had been by the testator mingled with money of his own which, including the trust fund, had come into the possession of the executor, facts which are entirely wanting here. The opinion cites *Lathrop* v. *Bampton* with approval and it does not hold, or intimate, that it was not necessary in a suit in equity to aver that the administrator had come into possession of the trust fund which he was to be required to pay over.

James Maguire is not made defendant in his personal capacity, but solely in his capacity as administrator. The prayer of the complaint is applicable jointly to both counts and it does not ask for the enforcement of any trust, but does ask specifically for judgment "against said defendant" for a stated sum covering the demands set forth in both counts, "all to be made payable in due course of administration," which is the appropriate prayer in an action to recover a debt from an estate. These formal indications of intent to plead a mere debt might be disregarded and the complaint held good upon a different theory, in the interests of justice, if the facts alleged would warrant it. But the facts do not authorize it, and these forms of expression serve to emphasize what is reasonably apparent from the complaint as a whole, including both counts, that plaintiff's counsel believed that some advantage, possibly a jury trial, could be obtained by drafting the complaint as for a debt, instead of as a bill of equity, and that, with that end in view, the averments which might make it possible to hold it good as a cause of action to enforce a trust were purposely omitted.

We adhere to the opinion heretofore rendered in Department and adopt it as the opinion of the court in Bank.

Angellotti, J., Sloss, J., Henshaw, J., and Lorigan, J., concurred.