## UNITED STATES et al. v. CITY OF NEW BRUNSWICK et al.

(District Court, D. New Jersey. September 22, 1924.)

**Taxation** ⊚⇒5—**Lots sold by housing corporation, in purchasers' possession prior to execution of deeds, held not immune from taxation.**

Lots sold by the United States Housing Corporation, a government agency, under Act Cong. July 19, 1919, § 5 (Comp. St. Ann. Supp. 1923, § 3115⅝e), under contracts, *held* not immune from taxation while in possession of purchasers who had paid 10 per cent. of purchase price and were willing to execute mortgages, and hence entitled to deeds; the government in such case having parted with equitable title.

In Equity. Suit by the United States and another against the City of New Brunswick and others. Bill dismissed.

Thomas W. O'Brien, of Washington, D. C., Walter G. Winne, U. S. Atty., of Hackensack, N. J., and Walter H. Bacon, Asst. U. S. Atty., of Bridgeton, N. J., for complainants.

Thomas H. Hagerty, of New Brunswick, N. J., for defendants.

LYNCH, District Judge. The United States Housing Corporation, an executive agency of the United States, on September 10, 1918, for and on behalf of the government, acquired title by purchase to some 42 acres of land situate within the limits of the city of New Brunswick, N. J. Thereafter the land was subdivided into blocks and lots and dwellings were constructed thereon, the entire cost and expense of the development, with the exception of the cost of constructing an outlet sewer, being borne by the government as a war measure.

Beginning October 29, 1919, the properties so purchased were sold to individual home buyers under contracts providing for the immediate payment of 10 per cent. of the purchase price and the balance to be secured by mortgages, the housing corporation agreeing to convey a fee-simple title free and clear of all incumbrances. This was done under an Act of Congress approved July 19, 1919. 41 Stat. 224, § 5 (Comp. St. Ann. Supp. 1923, § 3115⅝e).

The properties were subsequently sold for taxes assessed by the city of New Brunswick for the years 1918 and 1919, and were advertised for sale for delinquent taxes assessed for the years 1920, 1921, and 1922, which advertised sale was postponed without date under restraint of this court. The properties were also assessed for the years 1923 and 1924.

Because of these assessed taxes, which stand as liens against the properties, complainant corporation has not executed and delivered conveyances to the individual home buyers, and the legal title thereto still remains vested in the United States Housing Corporation. The purchasers who have paid their 10 per cent. are entitled to a conveyance upon the furnishing of the mortgages provided for in the contract of sale.

The question in this case is whether the city of New Brunswick has a legal right to assess taxes on these various properties before the actual delivery of a deed to the purchaser. It is contended by the government that, because the title to the land remains vested in the United States Housing Corporation, these properties are exempt from taxation.

The contract of sale contained the following clause: "And it is further agreed that all taxes, assessments, water rentals, insurance, and rents shall be apportioned and adjusted between the parties hereto as of the date of this contract, and all general taxes and special assessments or any installments therefor, which hereafter become due and payable shall be paid by the purchaser."

There were 197 contracts entered into which are still in force. Fifty-eight of the purchasers became entitled to receive their deeds between October 22, 1919, and January 1, 1920; 126 between January 1, 1920, and January 1, 1921; 10 between January 1, 1921, and January 1, 1922; 2 between January 1, 1922, and January 1, 1923; and 1 subsequent to January 1, 1924. These purchasers, during the periods respectively mentioned, enjoyed all the privileges and benefits of taxpayers, direct and indirect, to the city of New Brunswick. They re-

ceived police and fire protection. Their garbage and ashes were collected. Their children were educated, and they enjoyed the benefits incident to city, county, and state government in common with other residents of the city They were at all times mentioned entitled to receive a deed upon the furnishing by them of the mortgage provided in the contract, and it does not appear that any of them have refused to execute and deliver these mortgages.

It is conceded by the defendants that the properties are not taxable for the years 1918 to 1919, during which time the complete title, both legal and equitable, was in the United States Housing Corporation, an instrumentality of the United States government. The issue simplified, therefore, is: Did the equitable title pass to these various purchasers subsequent to 1919 in such manner and so completely as to render the respective properties taxable for the years 1920 to 1924, following the times that the purchasers respectively became entitled to receive their deeds?

The general rule will be found in the case of Wisconsin Central Railroad Co. v. Price County, 133 U. S. 496, 10 Sup. Ct. 341, 33 L. Ed. 687, from which I quote: "Usually the possession of the legal title by the government determines both the fact and the right of ownership. There is, however, an exception to this doctrine with respect to the public domain, which is as well settled as the doctrine itself, and that is, that where Congress has prescribed the conditions upon which portions of that domain may be alienated, and provided that upon the performance of the conditions a patent of the United States shall issue to the donee or purchaser, and all such conditions are complied with, the land alienated being distinctly defined, it only remaining for the government to issue its patent, and until such issue holding the legal title in trust for him, who in the meantime is not excluded from the use of the property—in other words, when the government has ceased to hold any such right or interest in the property as to justify it in withholding a patent from the donee or purchaser, and it does not exclude him from the use of the property— then the donee or purchaser will be treated as the beneficial owner of the land, and the same be held subject to taxation as his property. This exception to the general doctrine is founded upon the principle that he who has the right to property, and is not excluded from its enjoyment, shall not be permitted to use the legal title of the gov-

ernment to avoid his just share of state taxation." '

Congress prescribed the conditions upon which the lands owned by the United States Housing Corporation might be alienated, by the Act of May 16, 1918, c. 74, § 5, 40 Stat. 552 (Comp. St. Ann. Supp. 1919, § 5115$^5$/₆e), and the United States housing Corporation proceeded thereunder. The act provided for the sales of property by the housing corporation, and prescribed that no sale or conveyance should be made without reserving a first lien upon the property for the unpaid purchase money. This same provision appeared in the amendment of July 19, 1919 (chapter 24, § 1, 41 Stat. p. 224), and in the mandatory Act of March 21, 1922 (chapter 112, § 5, 42 Stat. 468 [Comp. St. Ann. Supp. 1923, § 5115$^5$/₆e]). The housing corporation entered into identical contracts with these various purchasers providing that a deed would be delivered and a purchase money mortgage taken for the balance of the purchase price upon the payment of 10 per cent. thereof in each case. The 10 per cent. was paid, the purchasers were ready to execute and deliver their mortgages, and it only remained for the housing corporation to issue its deeds. The purchasers were in possession. Substitute "deed" for "patent" in the quotation from Wisconsin Central Railroad Company v. Price County, supra, and the analogy between that case and the case at bar is complete.

In the case of Carroll v. Safford, 44 U. S. (3 How.) 441, 11 L. Ed. 671, the complainant entered on certain lands, paid for them, and received from the land office a final certificate in 1836. Patents were not issued until August 12, 1837. The delay in issuing the patents was not at the instance of the complainant. The lands were assessed for taxation after the issuing of the certificate and before the issuing of the patent. The legal title did not pass until the issuing of the patent. It was held that the lands were assessable. The following quotation is from the opinion: "But it is insisted 'that the lands in question were not, before the date and execution of the patents for them, subject to taxation at all by the state of Michigan.' It is supposed that taxation of such lands is 'an interference with the primary disposition of the soil by Congress,' in violation of the ordinance of 1787; and that it is 'a tax on the lands of the United States,' which is inhibited by the ordinance. Now, lands which have been sold by the United States can in no sense be called the property

of the United States. They are no more the property of the United States than lands patented. So far as the rights of the purchaser are considered, they are protected under the patent certificate as fully as under the patent. Suppose the officers of the government had sold a tract of land, received the purchase money, and issued a patent certificate, can it be contended that they could sell it again, and convey a good title? They could no more do this than they could sell land a second time which had been previously patented. *When sold, the government, until the patent shall issue, holds the mere legal title for the land in trust for the purchaser, and any second purchaser would take the land charged with the trust.*" See, also, Witherspoon v. Duncan, 4 Wall. 210, 18 L. Ed. 339.

In the case of Kansas & Pacific Railway Co. v. Prescott, 16 Wall. 603, 21 L. Ed. 373, the court said: "While we recognize the doctrine heretofore laid down by this court, that lands sold by the United States may be taxed before they have parted with the legal title by issuing a patent, it is to be understood as applicable to cases where the right to the patent is complete, and the equitable title is fully vested in the party without anything more to be paid, *or any act to be done going to the foundation of his right.*"

These cases and others of similar import were reviewed by Chief Justice Taft in the case of Irwin v. Wright, 258 U. S. 219, 42 Sup. Ct. 293, 66 L. Ed. 573. After first holding that no state can tax the property of the United States within its limits, Chief Justice Taft says: "An exception to this principle, or rather its nonapplication, is recognized where the government has by final certificate parted with the equitable title to a person subject to state taxation and retains only the legal title by its delay in issuing the patent. Not until the equitable title passes can the state tax the entryman, except in the case of mining claims (the reason for which we shall presently consider), and in cases in which express authority to tax is given in the statute."

The case at bar is not a mining case, and it is not a case in which express authority to tax is given in the statute. It is one in which the equitable title passed. Further along in the opinion it is repeated that the acquisition of the equitable title marks the line between nontaxability and taxability. That the equitable title passed to the purchasers in the case at bar, not later than the time when they paid 10 per cent. of the stipulated purchase prices, and became entitled to receive a deed, is elementary. Pomeroy's Equity Jurisprudence (3d Ed.) §§ 105, 368, 372, and 1406.

In the case at bar the purchasers paid their 10 per cent. and there was nothing for them to do but to give a mortgage simultaneously with the execution and delivery of the deed. The giving of the mortgage was not a condition precedent. If the purchasers had refused to execute and deliver mortgages, the situation would, of course, have been different, but in this case the purchasers are not in default. Their contracts remain in force, unrescinded (stipulation, par. 18), showing that they are not in default. The housing corporation has refused to deliver deeds pending the determination of this disputed tax question, and therefore is the holder of the naked title in trust for these purchasers who have the beneficial interest therein.

It is my conclusion, after a consideration of this issue, that the defendants properly taxed these properties against the various purchasers, and that the assessment in the names of the purchasers was legal. It is my opinion that the bill should be dismissed.