[Civ. No. 1548.   Second Appellate District.—June 23, 1915.]

## ADA A. BRAM, Appellant, v. S. CHRISTOPHER et al., Respondents.

FRAUD—PLEADING—INSUFFICIENT COMPLAINT—MISJOINDER OF CAUSES OF ACTION AND PARTIES DEFENDANT.—In an action to obtain judgment that a certain sum of money obtained by the defendants in the form of a loan from the plaintiff (a note and chattel mortgage being executed to plaintiff in connection therewith), was obtained by the defendants by means of fraud and deceit, and for a judgment for an unpaid balance of the money loaned, and that the defendants hold said unpaid balance in trust for plaintiff, there is a misjoinder of causes of action and of parties defendant, where it appears from the complaint that the note and chattel mortgage executed to plaintiff in connection with the loan were executed by only one defendant, and the complaint is capable of being construed as an attempt to recover moneys obtained by both defendants by fraudulent means, and it being attempted to state a cause of action to recover from one defendant the unpaid balance due upon the note after the security had been exhausted by sale of the mortgaged property and the proceeds applied toward the payment of the note.

ID.—SUIT IN EQUITY—INSUFFICIENCY OF COMPLAINT.—Such a complaint, as a pleading in a suit in equity based upon the theory of fraud, fails to state facts sufficient to constitute a cause of action, where it appears from the allegations thereof that the only item of falsity concerning the alleged representation regarding the ownership of the mortgaged property (a confectionery establishment), was contained in the statement that the fixtures did not belong to the defendants, without any description of them or statement as to their value, and that the falsity of the other alleged principal representation concerning the value of the business and good will, was not intended to refer to or include representations of facts as to the value of the physical property mortgaged, by reason of the fact that the complaint contained no allegation of the actual or represented value of such physical property.

ID.—LACHES OF PLAINTIFF—KNOWLEDGE OF FRAUD—ESTOPPEL.—Where it appears from the complaint that plaintiff had knowledge of the principal facts upon which she relied for more than two years before filing the complaint and with such knowledge withheld the charges of fraud and consented, at the instance of the defendants, to a sale of the mortgaged property and application of the proceeds for her benefit, upon their representation, which is not alleged to have been false, that they were financially embarrassed and could not pay the debt in full, plaintiff is estopped from maintaining an action based upon the fraud, and a personal judgment as in an action at law is the only available remedy.

APPEAL from a judgment of the Superior Court of Los Angeles County.   J. P. Wood, Judge.

The facts are stated in the opinion of the court.

H. H. Appel, and E. J. Dennison, for Appellant.

Milton K. Young, and W. D. Finch, for Respondents.

CONREY, P. J.—The plaintiff appeals from a judgment entered after an order sustaining demurrer to her amended complaint and after her default in the matter of further amending the complaint.

The action was commenced September 21, 1912, and its purpose is to obtain judgment that a certain sum of money obtained by the defendants in the form of a loan from the plaintiff (a note and chattel mortgage being executed to plaintiff in connection therewith), was obtained by the defendants by means of fraud and deceit; that the plaintiff have judgment for an unpaid balance of the money loaned, and a judgment that the defendants hold said unpaid balance of money in trust for the plaintiff.

On October 8, 1909, the plaintiff delivered to the defendants the sum of fifteen thousand dollars as a loan.   Thereupon a note for fifteen thousand dollars was executed and delivered to the plaintiff, bearing interest at the rate of eight per cent per annum, interest payable quarterly, principal payable 5 years from date October 8, 1909; and further providing that upon failure to pay said interest quarterly that the whole sum of principal and interest should become immediately due and payable to the plaintiff.   The complaint does not directly state by whom the note was signed, but al-

leges that at the same time when the note was executed the defendant S. Christopher executed a chattel mortgage to the plaintiff upon all the equipment, appliances, fixtures, furniture, and machinery, and other personal property, located at a certain confectionery establishment conducted by defendants at No. 350 South Broadway in the city of Los Angeles.

In negotiating for said loan the defendants, "for the purpose and with the intent of defrauding the said plaintiff out of the sum of $15,000," represented to the plaintiff that S. Christopher was the owner of the confectionery establishment at the address above stated, and was the absolute owner of and controlled all the furniture, fixtures, tools, and appliances located therein and connected therewith; that said personal property was free of all encumbrances and debts, and that the defendants were conducting said business and were in receipt of large profits therefrom and that the defendants were not indebted to anybody; also that the said business and the goodwill thereof was of the value of upwards of thirty thousand dollars.

It is further alleged that the defendants, with like intent and purpose, promised the plaintiff that if plaintiff would loan said money to the defendants they would enlarge said business by purchasing and installing machinery and other equipment for an ice cream factory, and for installing and establishing a modern bakery and for horses and vehicles for delivery purposes, and would immediately employ said sum of fifteen thousand dollars for the purpose of extending and enlarging the business as aforesaid; and further promised that when all of said new equipment was installed they would execute to plaintiff a chattel mortgage on all of said property and business, including the property thus newly acquired, and further promised that for additional security to plaintiff they would procure a policy of insurance in the sum of ten thousand dollars on the life of defendant S. Christopher and would assign such policy of insurance to the plaintiff as further security and would keep said policy of insurance in full force and effect by making all payments of premiums thereon necessary during the life of said loan.

Plaintiff believed each and all of the representations and promises aforesaid and relied upon them, and solely induced thereby paid over to the defendants said sum of fifteen thou-

sand dollars as a loan and received delivery of said note and said mortgage of date October 8, 1909.

The defendants failed, neglected, and refused to employ said sum of fifteen thousand dollars, or any part thereof, toward the acquisition of any new or additional property which they promised to acquire as aforesaid. *On September 30, 1911,* the defendants declared that they would not purchase said equipment and machinery with said moneys or at all. No mortgage was ever executed as security for said loan, other than the mortgage of October 8, 1909. The complaint does not allege that said ten thousand dollars life insurance policy was not obtained, and does not allege that no premiums were paid thereon, but it alleges that upon receiving the money loaned by plaintiff the defendants and each of them failed and neglected to keep the premiums due upon said policy of insurance paid and the same (at some time not stated) became of no effect and void, and that the promise which they made to keep said policy alive during the life of the indebtedness to the plaintiff was made solely for the purpose of cheating and defrauding plaintiff of the moneys loaned.

The complaint alleges that at the time of receiving said fifteen thousand dollars loaned by plaintiff the defendants were insolvent and were in debt in a sum exceeding eight thousand dollars; that *the fixtures* in said establishment at 350 South Broadway did not belong to the defendants or either of them, and that *the business and good will* were not worth any sum in excess of five thousand dollars, and that they were not receiving any profits therefrom, but were conducting the business at a loss.

Nevertheless, it is alleged that on September 30, 1911, the defendants authorized and empowered one G. Ray Horton to take charge of said business and to cause said business and the property thereof and used therewith, including the lease, stock in trade, business, good will and all of the mortgaged personal property, to be sold and to apply the proceeds of said sale to the payment of said note and mortgage and of all the expenses which might be incurred by said Horton in taking possession of said business and in maintaining and keeping the same and in making said sale; and the defendants then and there represented to the plaintiff that they were financially embarrassed and could not pay said indebtedness in full or carry out and perform their promises hereinbefore

alleged and by reason of said representations (not alleged to be untrue) plaintiff consented that said Horton might take charge of said business and property and sell the same and apply the proceeds of sale toward a partial payment upon said note of fifteen thousand dollars and said mortgage and lien upon said property was then and there canceled, and after applying the payments made upon the note as aforesaid, there was on December 6, 1911, a balance of $9,516.05 due and unpaid from defendants to plaintiff, with interest thereon, and since that time no part of the interest or principal has been paid.

The plaintiff alleges that since December 6, 1911, "and within a few months last past," she has discovered and has been informed and believes, and upon such information and belief alleges the fact to be, that at the time said representations were made by the defendants and each of them, said representations were then and there false and untrue and made with intention to cheat and defraud the plaintiff; and that at the time said promises were made by the defendants and each of them they did not intend to carry out said promises and did not intend to enlarge the said business or install machinery or other equipment promised as above stated; and that all of their promises made as aforesaid with respect to purchase of new or additional equipment, machinery, etc., were made without any intention on the part of the defendants to carry out said promises and were made solely for the purpose of deceiving the plaintiff and of cheating and defrauding her out of the moneys loaned as aforesaid.

A demurrer to the amended complaint was filed upon numerous grounds, among which are, that the amended complaint does not state facts sufficient to constitute a cause of action against the defendants or either of them; that the amended complaint is uncertain for various reasons to which we shall not find it necessary to give much attention; that there is a misjoinder of parties defendant in this,—that any obligation arising by reason of any security or lack of security under said chattel mortgage or the lien thereof, is the obligation of S. Christopher and not of Cornelia Christopher; that several causes of action have been improperly united in this,—that a cause of action for the recovery of money arising upon a promissory note has been united with a cause of action

against trustees; that plaintiff has been guilty of such laches as to bar her from recovery in this action:

Although the complaint states merely that the defendants *caused* a note to be executed to the plaintiff and in connection therewith a chattel mortgage by the defendant S. Christopher, we shall assume for the purposes of this decision that, as claimed by plaintiff's counsel in their brief, the note, like the mortgage, was executed by S. Christopher alone. This is perhaps the inference that may fairly be drawn from the allegations of the complaint and its several references to the note. The argument of appellant throughout assumes and insists upon the proposition that the action is one based upon charges of fraudulent acts by means of which the defendants should be held as trustees of the fund of money delivered to them by the plaintiff in reliance upon representations and promises falsely made. In the brief for appellant it is further contended that even if the court should eliminate from consideration all the allegations of fraud, deceit, and misrepresentation, the complaint would still show that defendants had in their possession nine thousand dollars and over which in equity and good conscience belong to the plaintiff. The complaint is all in one count. It is equally susceptible of being considered an attempt to recover moneys obtained by both defendants by fraudulent means and of being considered as an attempt to state a cause of action to recover from one defendant the unpaid balance due upon the note after the security had been exhausted by sale of the mortgaged property and the proceeds applied toward payment of the note. In this view of the case, the demurrer was properly sustained on the ground of misjoinder of causes of action. (Code Civ. Proc., sec. 427, subds. 1, 4 and 8, and final paragraph of same section.) And from the same standpoint the demurrer was properly sustained as containing a misjoinder of parties defendant, since the contract constituted by the note and mortgage was made by S. Christopher alone, and the defendant Cornelia Christopher was not an obligor therein. Considered merely as an action at law, there is no cause of action stated against the defendant Cornelia Christopher, even admitting that such cause of action is stated as to defendant S. Christopher.

As a pleading in a suit in equity based upon the theory of fraud, the complaint does not state facts sufficient to constitute a cause of action. This will appear by separate con-

sideration of some of the principal representations upon which the plaintiff claims to have relied and by comparing these representations with the allegations as to falsity thereof. The defendants represented that S. Christopher was the owner of the confectionery establishment and of the furniture, fixtures, tools, and appliances connected therewith. The only item of falsity about these facts is found in the allegation that the fixtures referred to in the mortgage of October 8, 1909, did not belong to the defendants or either of them. The complaint does not state what these fixtures were, or that they had any value. Assuming it to be sufficiently pleaded that all of the mortgaged property was delivered to Horton to be sold and the proceeds applied toward satisfaction of the indebtedness of defendants to the plaintiff, it is plainly to be inferred that the owner of the fixtures, whoever he was, did not assert his claim in opposition to the mortgage. Therefore, this item of alleged misrepresentation as to the ownership of fixtures is immaterial. The mortgage covered the physical property,— not the business and good will of the said confectionery establishment.

Again it is alleged that the defendants represented that "the said business and the good will thereof was of the value of upwards of $30,000," whereas it is alleged that at the time of making the loan "the business and good will was not worth any sum in excess of $5,000." That these allegations concerning representations of value of the business and good will, and concerning the actual value of the business and good will are not intended to refer to or to include representations of facts as to the value of the physical property described in the chattel mortgage, is obvious when the same are construed in connection with other statements contained in the complaint, as well as from consideration of other necessary items of fact upon which the complaint is strangely silent. There is no allegation as to what the values were represented to be or what were the actual values of the property described in the mortgage. It is shown that after two years further use of the mortgaged property and without any addition having been made thereto, an agent was selected to sell the entire property, including that described in the mortgage, and apply the proceeds so as to pay the expenses of his care and sale of the property (amount not shown), and to payment of said note and mortgage. Thereafter such payments were made on the

note and mortgage, that on December 6, 1911, there remained unpaid a balance of $9,516.05. It is not directly stated that this was the result of any sales and disbursements made by Mr. Horton, though doubtless the pleading was intended to declare that Horton did make sales and payments, with the result as stated. But the complaint does not show what property was sold; and does not show what amount was received for the mortgaged property, or for the business and good will, or for all or any part of such property as may have been sold by him. These omissions are noted in the demurrer for uncertainty, as follows: "It cannot be determined from paragraph IV of the amended complaint whether G. Ray Horton took charge of said business, lease, stock in trade, and good will thereof, as agent of defendants or as agent of plaintiff, nor can it be determined from the said allegations what the expenses of said Horton were in taking charge of said business and in selling said property, nor can it be determined from said allegations how much was received by said Horton from the sale of said property, nor can it be determined what the principal and interest of said note amounted to at the time of the making of the application of the proceeds of sale thereon."

An essential part of plaintiff's claim that she has a cause of action arising out of false representations and promises as stated in the complaint, is the alleged fact that at the time said representations and promises were made by the defendants they were made solely for the purpose of deceiving the plaintiff and of cheating and defrauding her out of said sum of fifteen thousand dollars and the defendants did not intend to perform said promises; and not only is it alleged that plaintiff relied upon said representations and promises in making the loan, but it is further alleged that in consenting that the mortgaged property should be sold by one G. Ray Horton late in the year 1911 at the instance of the defendants, the plaintiff gave her consent by reason of representations made by the defendants that they were financially embarrassed and could not pay said indebtedness in full or carry out their promises hereinbefore alleged. Plaintiff does not allege that these last named representations were untrue, and the facts thus stated in connection with the plaintiff's consent to the acts of Horton and the cancellation of said mortgage and the lien thereof are not sufficient to excuse the plaintiff from the legal

consequences of her acts at that time whereby, in the light of the facts then known to her, she recognized the validity of said mortgage and consented to accept all the advantages thereof.

The defendants had promised the plaintiff that if she would lend them fifteen thousand dollars they would employ the entire sum immediately in purchasing certain machinery and equipment for the purpose of extending and enlarging said confectionery business; and that they would thereupon give her a new note and mortgage covering this additional property, as well as that described in the original mortgage. Necessarily she knew very soon after the 8th of October, 1909, that such additional or substituted note and mortgage were not being executed and delivered to her, and knew or had ample means of knowing that the money loaned by her to the defendants was not being employed in accordance with the promises made. Indeed, she alleges that defendants refused, upon receipt of the money loaned, to immediately, or at all, apply the same as promised. It follows that long before the transactions occurring between September 30, 1911, and December 6, 1911, the plaintiff knew substantially all of the facts constituting the alleged fraud, except perhaps the fact of the insolvency of the defendants. As to the insolvency of the defendants, the plaintiff was fully informed before she consented that Horton should take charge of the property and sell the same, etc. With respect to the allegation that the plaintiff did not discover until after December 6, 1911, and within a few months prior to the commencement of this action (original complaint filed September 21, 1912), that said representations and promises were made with the intention to cheat and defraud the plaintiff and without intention to perform said promises, it is necessary to observe that this allegation relates solely to a discovery concerning the state of mind of the defendants on or about October 8, 1909. In order that the allegations of this new discovery might have any value or be of any effect with respect to the plaintiff's alleged cause of action, it would be necessary to state some fact or facts discovered during the recent period of time above mentioned, having relation to and tending to establish such want of intention to perform on the part of the defendants. In the absence of any showing of such facts, this allegation of recent discovery of the original false intentions of defendants amounts to nothing more than a statement that, in view of

the entire state of facts which for a long time had been known to the plaintiff, she has recently made up her mind that the defendants never did intend to perform their promises and that they have at all times intended to cheat and defraud her. Such pleading is but ''a fleshless skeleton of allegation.'' (*Robertson* v. *Burrell,* 110 Cal. 568, 578, [42 Pac. 1086]; *Burke* v. *Maguire,* 154 Cal. 456, 465, [98 Pac. 21].)

The statement of facts thus reviewed reveals an admission by the plaintiff that the principal facts upon which she relies have been known to her for more than two years before filing her complaint; that with knowledge of substantially all of such alleged facts she agreed to accept and, we may assume, did receive the full benefit of the mortgage given her on October 8, 1909, meanwhile withholding her charges of fraud. Under such circumstances, even if originally she had a cause of action based upon such charges of fraud, the course of action adopted by her for her own benefit with relation to the mortgage has been such that she is estopped from prosecuting any action herein, except an action at law to recover any balance due her on the note given October 8, 1909. Also, since it is not shown that any of the trust fund remains in possession of the defendants (but rather the insolvency of defendants gives us some indication that the fund is dissipated and cannot be traced to any existing property), it would be impossible to decree that defendants ''hold said moneys in trust'' for the plaintiff. A personal judgment as in an action at law, is the only available remedy. (*Title Ins. & Trust Co.* v. *Ingersoll,* 158 Cal. 474, 484, [111 Pac. 360]; *Lathrop* v. *Bampton,* 31 Cal. 17, 23, [89 Am. Dec. 141].)

Assuming that the plaintiff has a cause of action at law to recover the unpaid balance evidenced by said note, her action should be upon said note against the maker thereof; and as above stated, such action cannot properly be united with an action against the defendant Cornelia Christopher to obtain a decree against her on account of any fraudulent acts for which she may have been responsible.

Our conclusion is that the demurrer was properly sustained.

The judgment is affirmed.

James, J., and Shaw, J., concurred.