[L. A. No. 18453. In Bank. July 5, 1944.]

THOMAS W. NEEL, as Executor, etc., et al., Appellants, v. MORRIS H. BARNARD, as Executor, etc., et al., Respondents.

Don G. Bowker, Henderson & Churchill and James C. Hollingsworth for Appellants.

Rogers & Rogers, John H. Alvord, Newlin & Ashburn and A. W. Ashburn for Respondents.

THE COURT.—A petition for hearing in this case was granted to the end that further consideration be given to the contentions of the appellants. On such consideration, we agree with the disposition of the appeal by the District Court of Appeal of the Second Appellate District, Division Three, and adopt as the opinion of this court the opinion of that court prepared by the Honorable Hartley Shaw, Justice pro tem. It is as follows: "This action was commenced by Henry H. Neel, Thomas W. Neel, his son, and Dessie L. Neel, wife of Thomas, against Chas. Barnard. After the action was begun, plaintiff Henry H. Neel and defendant Chas. Barnard died, the executors of their respective estates were substituted for them, and the executrix of the deceased wife of Barnard was also made a defendant. In discussing the case we shall use the terms 'plaintiffs' and 'defendants' to refer to the original parties, except as otherwise specially stated. The present plaintiffs appeal from a judgment in favor of the present defendants.

"This action arose from a contract between the plaintiffs and the defendant by which, as plaintiffs claim and the trial court found, the defendant became a trustee for plaintiffs, and was based upon certain claimed breaches of duty by defendant as such trustee. The contract consisted of a letter written by defendant to H. H. Neel and T. W. Neel, two of the plaintiffs, dated December 23, 1930, and a more formal agreement naming all the plaintiffs as parties of the first part and defendant as party of the second part, dated December 26, 1930, and signed by all of them. The letter transmitted the agreement to plaintiffs and referred to it in such fashion as to make both, as the trial court found, parts of the one contract between the parties. Also a part of the transaction was a deed, dated December 26, 1930, by which the plaintiffs conveyed to defendant, without qualification or restriction of any sort, their real property hereinafter mentioned.

"At and prior to the time of executing this contract plaintiffs were the owners of approximately 245 acres of valuable farming land in Ventura County, mostly used for the purpose of producing walnuts, with some of it in beans and other crops. Only 10 acres of this land were owned by plaintiffs Thomas W. Neel and Dessie L. Neel, the balance being the property of plaintiff Henry H. Neel, who was a widower.

At the time of this transaction this land was subject to trust deeds for money loaned to the plaintiffs, a large part of it by the defendant but some of it by others, amounting, with advances also secured by the trust deeds, to $228,260.92, as of March 31, 1931, according to the recitals of the agreement above mentioned, which projected the balances to include interest to that date. Payment of this sum and interest thereon was in default, in part, the trust deeds were subject to foreclosure, and plaintiffs were looking for some mode of refinancing their debts or otherwise saving themselves from the complete loss of their property which seemed impending.

"The letter and agreement above mentioned recited the facts regarding the loans, the incumbrances and the default in all the detail necessary to a complete statement, provided for the execution of the deed above referred to, and declared that plaintiffs had received no consideration for the deed. By the agreement the plaintiffs gave the defendant 'full authority and power irrevocable to sell, lease or otherwise dispose of any part of or all of said real property, or any interest or estate therein, in such pieces or parcels, and for such prices and upon such terms and conditions as the party of the second part may deem proper, and to enter into contracts, and execute all papers as may be proper or necessary in order to carry out and consummate said sale or sales, and upon receipt of the purchase price, either in cash or part of the purchase price in cash and the payment of the remainder to be secured by a mortgage or deed of trust upon the property so sold, to execute and deliver to the respective purchaser all necessary and proper contracts, bonds and deeds of conveyance for the lands so sold which are or may be necessary or proper to fully carry out and complete the transfer of the property so sold and to be in such form and under such conditions as the party of the second part may deem proper.' Plaintiffs also authorized the sale of personal property used on the realty and of water stock appurtenant to it. In the agreement plaintiffs stated their 'confidence and trust in the integrity and honesty' of defendant and their belief, by reason thereof, that 'the disposition and sale of said real property and the payment of their indebtedness . . . can be more expeditiously accomplished, at less cost, expense and for a greater value than can possibly be made' on a foreclosure sale and that the proceeds of sale will probably be in

excess of the debts 'if the management and sale of said real property is intrusted to' defendant. The defendant agreed 'that when the proceeds from the sale of said real property is ample and sufficient to pay the indebtedness herein described, and the advances, costs and expenses in the care and management of said real property, he will then make a full report and accounting' to the plaintiffs 'of all the receipts and disbursements made and upon approval and acceptance of said report' the defendant will reconvey to plaintiffs 'all the real property remaining unsold, if any; . . . and upon acceptance and approval of said final report . . . he shall be released and discharged from all confidence created by the acceptance of said grant to said real property.' Another term of the agreement was that the proceeds of sales and the income from the property 'shall be applied to the payment of the indebtedness herein described, the interest to accrue thereon, and the disbursements made by . . . [defendant] in the care and management of said real property, and for no other purpose.' It was also agreed that defendant was to receive compensation for his services. Pursuant to this contract defendant took possession of the property described in it and has held and operated that property ever since, except two parcels which he sold.

██ "Defendant contends that this agreement did not create a trust, but merely made of defendant a mortgagee in possession. The trial court, however, treated defendant as a trustee and we are satisfied that this view of the matter is correct. It is true the defendant, in his letter, referred to the fact that the deed was without limitation or qualification, saying also 'I decline to enter into any trust agreement, or declaration of trust'; but in this respect he was like Byron's maid who 'whispering "she would ne'er consent," consented.' The defendant was not even named as the lender and beneficiary in some of the trust deeds recited in the agreement, and many of the notes originally made to him as payee had at the date of the agreement been transferred to others. The powers given him by the contract far exceeded those of a mortgagee in possession. The relationship created by the contract has all the earmarks of a voluntary trust and must be so regarded. There is a transfer of property by plaintiffs to defendant, motivated by their personal confidence reposed in him, for the purpose of enabling him to carry out

certain purposes for the benefit of plaintiffs as well as the holders of the indebtedness, which is voluntarily accepted by defendant, and he assumes an obligation to carry out these purposes, subject of course to the discretion provided for in the agreement; all in writing. This is sufficient to create a voluntary trust and make defendant a trustee. (Civ. Code, §§ 852, 2216, 2219, 2221, 2222.) █ No particular language or terminology is necessary to create a trust; nor need the word 'trust' or 'trustee' be used. (*Weiner* v. *Mullaney* (1943), 59 Cal.App.2d 620, 631 [140 P.2d 704].)

"Many of the points made by appellants are based upon the claim, which permeates their briefs, that the defendant, a short time after the trust was created, repudiated and abandoned it, claimed the trust property as his own and from that time forward treated the property as if there were no trust and the conveyance to him had been absolute, the plaintiffs further asserting that by such conduct defendant committed a conversion of the trust property and must be charged with the value of the propery as of the date of repudiation. In reply the respondents contend that this claim of appellants is not within the scope of the complaint filed by plaintiffs or of the claim presented to the estate of the original defendant. These two points merge into one, for when, by reason of the death of the original defendant before the trial, it became necessary to file a claim against his estate (Prob. Code, § 709) the claim filed was simply a copy of the plaintiffs' complaint herein. There is no room here for the application of the rule that prevails where an issue not made by the pleading is tried by consent, even if that rule could be applied to a variance from the claim filed, for defendant made timely objection to the evidence on which appellants found their contentions in this matter.

"The complaint contained two statements of causes of action. The first alleged the creation of the trust, stating the surrounding circumstances including defendant's superior knowledge and skill in the management and sale of property such as that of plaintiffs and plaintiffs' great trust and confidence in defendant, setting forth copies of defendant's letter and of plaintiffs' deed to him and giving what the plaintiffs understood to be the legal effect of the agreement, a copy of which they alleged they had been unable to find. This stated legal effect, while lacking many of the details of the actual

agreement, did not differ from it in any respect material to the present inquiry. This count also alleged that defendant had made two sales of described portions of the land plaintiffs had conveyed to him, and that he had received income, rents and profits from the land conveyed to him which were in excess of the costs of operation, that he had failed and refused to render an account and plaintiffs had demanded one. This count further alleged that defendant became trustee for the plaintiffs, that plaintiffs had done everything required of them by the contract, and that defendant had 'failed, refused and neglected to properly perform and discharge his duties as trustee, in that' he had failed and refused to account.

"The second statement of a cause of action began by incorporating the first. Then it alleged that by the contract between the parties it was agreed that defendant would 'diligently and expeditiously sell so much of said . . . properties as would liquidate and satisfy the said indebtedness then owed by the plaintiffs; that by reason thereof it was the duty and obligation of the said Chas. Barnard to sell transfer and dispose of so much of said real properties within a reasonable time as would liquidate said indebtedness; that there was at said time an active market for the disposal of said real property, and at such prices as would have liquidated said indebtedness then owed by plaintiffs and which would have left a balance either in money or property for the plaintiffs of approximately two hundred thousand dollars.' Then followed allegations that defendant had at various times not stated received bona fide offers from cash buyers for various parts of the property, which would have enabled defendant to sell the entire property for more than $400,000, but he 'refused to sell, transfer and dispose of certain parcels of said . . . properties' and if he had sold them plaintiffs 'would have been restored to the occupation and possession of certain parcels of said real properties and would have received the rents, issues, incomes and profits therefrom, and all to plaintiffs' damage in the sum of two hundred thousand dollars.' The second count then alleged facts regarding each sale made by defendant, showing that in each case the sale had been made for much less than the market value, to plaintiffs' damage in the aggregate sum of $37,619.28. Finally, it alleged that 'by reason of the failure, refusal and

neglect on the part of said Chas. Barnard to sell and dispose of said real properties within a reasonable time after taking the record title thereto,' interest on plaintiffs' indebtedness had accumulated and increased in the sum of $100,000, but if he had made sales within a reasonable time $85,000 would have been credited thereon, to their further damage in the sum of $85,000. Prayer was for an accounting, that upon the accounting defendant be required 'to pay, convey and deliver to said plaintiffs property cash that may be due them,' and for damages in the sum of $322,619.28.

■ "The action, as characterized by the complaint, goes far beyond an effort to follow and reclaim a specific fund or specific property. It asserts a general liability against defendant, to be satisfied out of the assets of his estate, whatever they may be, and arising out of the contract pleaded. It is therefore subject to the provisions of Probate Code, section 709, requiring the filing of a claim where an action is pending at the time of a decedent's death. (See 11A Cal. Jur. 706, 711, 712.) This conclusion is even more obvious as applied to appellants' theory of a repudiation of the trust, leading to a liability for the value of the property, for this theory involves an abandonment of the property by plaintiffs.

"Neither of the causes of action stated in the complaint constituting plaintiffs' claim said anything of a repudiation of the trust. The first was solely and simply an action to obtain an accounting. The second added to the first four items of damage which plaintiffs sought to recover; that is, $200,000 arising from defendant's failure and refusal to sell the property for enough to liquidate plaintiffs' indebtedness and leave them a balance of $200,000; $6,619.28 and $31,000 caused by defendant's sales of two properties for less than their value; and $85,000 for interest, which accrued on plaintiffs' debts by reason of defendant's delay in selling. We cannot see how any of these allegations even hints at, or can be regarded by any sort of implication as including, a repudiation of the trust by defendant, with concomitant claim to hold the property in his own right, free of any trust.

■ " 'The provision that the holder of a claim against an estate cannot maintain an action thereon unless the claim is first presented is equivalent to a declaration that he cannot maintain an action upon any claim that he has not first presented for allowance, and that in any action brought he can

recover only upon the claim which has been presented and rejected. This rule is settled by a long line of decisions. The claim as presented and passed upon is the foundation of the cause of action. The claimant's cause of action arises upon the claim in the form in which it has been presented; that is the only action he may maintain, and plaintiff is not permitted to prove a cause of action other than or different from that stated in the claim, or to amend his complaint so as to set up any other cause of action.' (11A Cal.Jur. 865-867; to same effect see cases cited in notes to Cal.Jur.) ██ A claim must 'sufficiently indicate the nature and amount of the demand to enable the executor and judge in probate to act advisedly upon it.' (*Thompson* v. *Koeller* [1920], 183 Cal. 476, 485 [191 P. 927].) Applying these rules to the present case, we conclude that the plaintiffs' claim as filed did not cover their present claim of a repudiation of the trust and a consequent liability of defendant's estate for the then value of the trust property. There was nothing in it to suggest that any such liability was to be asserted, and the executor was therefore not put in a position to act advisedly upon the claim as now made. For this reason we dismiss the claim of repudiation from our attention in giving further consideration to the appeal.

"The complaint and the claim do, however, clearly present the point that it was the duty of defendant to sell the trust property, or so much of it as was necessary, in a reasonable time, that he failed to do so, and that by reason of such failure the plaintiffs suffered damage. The trial court put a construction on the contract which contravenes plaintiffs' contention, in this finding: 'That it was not the duty or obligation of Chas. Barnard to sell, transfer and dispose of so much of the real property involved herein within a reasonable time as would liquidate said indebtedness, but that it was his duty to offer said properties for sale at what he deemed a reasonable and fair price in an endeavor and an attempt to liquidate said indebtedness within a reasonable time and have a substantial sum left over to pay to the Neels, or in case of a liquidation by sale of a part of the property, to return the remaining properties to the plaintiffs.' We shall not undertake to decide whether the construction thus put on the contract in regard to defendant's duty to sell within a reasonable time is correct; for assuming plaintiffs'

construction to be the true one, that is, that it was the defendant's duty to make sufficient sales within a reasonable time to liquidate plaintiffs' indebtedness, other findings and other terms of the contract are such that an error in the finding just quoted would not lead to a reversal.

"Much of plaintiffs' argument on this point is based on the further finding that the defendant had 'an opportunity to sell the 89 acre tract (part of the land conveyed to defendant by plaintiffs) for a net sum of $133,000 (the offer of $140,000 being subject to a 5 per cent real estate commission) which offer was made in January of 1931, and which was refused . . .' This is coupled with the further finding that 'at said time and place defendant offered to sell said property to the same person for $150,000 cash, which offer was likewise refused. That said offers and refusals were not made in violation of the terms of the contract, but in the exercise of an honest judgment and discretion made and exercised in good faith.' The contract, while it may have required a sale within a reasonable time, conferred a large amount of discretion on the defendant regarding the prices, terms and conditions of sale. The question, what was a reasonable time, is inextricably bound up with his exercise of discretion in these matters, and the time might vary accordingly. Defendant's mere failure to make a sale, even if, as plaintiffs contend was the case here, the price was adequate, as viewed from the standpoint of the present and the information on market conditions and trends now available, does not necessarily convict him of a breach of duty as trustee, for his discretion would properly take other matters into consideration.

"By the formal agreement defendant is given power to sell the land 'in such pieces or parcels, and for such prices and upon such terms and conditions as the party of the second part [defendant] may deem proper,' and in the letter defendant stated 'I must have the total and absolute control of the entire property as to its care, management, recital [so reads the record; perhaps 'rental' is intended] and sale or as to the disposition of the proceeds from the income or the proceeds or as to the disposition of the proceeds from a sale, and certainly there must be no restriction as to a sale and conveyance under such terms and conditions, as I may deem proper for as to those matters, I am to be the sole judge.'

By these provisions the defendant is given an absolute discretion, whose exercise cannot be reviewed or controlled by any other person or tribunal on consideration going to the soundness of the judgment exercised by him. (Civ. Code, § 2269.) No doubt his exercise of this discretion could be attacked for fraud or bad faith, but we discover no evidence which requires a finding of fraud or bad faith, contrary to the trial court's finding of good faith, in regard to the offer mentioned in the finding above quoted. This offer was made in January, 1931, within a month of the execution of the contract between plaintiffs and defendant. There is evidence that real estate values in the vicinity of this land dropped greatly in the latter part of 1931 and thereafter, but we find nothing to show defendant was not exercising an honest judgment when he refused the price offered him in January of that year.

"Concerning the later failure of defendant to sell, the court found 'That it is untrue that on or about December 26, 1930, or at any time thereafter, there was an active market for the disposal of said real property, but it is true that there were only occasional sales of like properties, similarly situated, and that there was not an active market for said properties at any time subsequent to December 26, 1930, and it is untrue that the defendants had an opportunity to sell any or all of said properties at such price as would have liquidated the indebtedness owed by plaintiffs to defendants and which would have left a balance either in money or property of plaintiffs of approximately $200,000.00 or any other sums. That the two sales made by plaintiff were made in the due course of business and were the only ones which could have been made other than an opportunity to sell the 89 acre tract . . .' (here follows the finding already quoted regarding this offer). Upon examining the evidence we see therein sufficient support for this finding, which it seems unnecessary to set forth here, to the mere lengthening of this opinion. Conditions of depression during the time in question are so well known that little proof of them is necessary. This finding while it does not directly pass upon the question of reasonable time, does in effect dispose of it; for if the property could not have been sold, on such terms as defendant properly determined, a reasonable time for sale had not

418

elapsed. Plaintiffs point to a letter of defendant written in January, 1931, stating that he had declined an offer for a 24 acre tract. No details of this offer appear except the price, and as to that the letter stated that defendant was holding the land for a higher price. Evidently the trial court did not accept this admission as proving the fact admitted, for it found that no such sale could have been made. The trial court was not bound to accept such an admission as conclusive of the fact, even though it was not directly contradicted.

But even if the offer was made, it is to be presumed that defendant exercised his judgment upon it and deemed the price too low, and we cannot say he was guilty of fraud or bad faith in declining to sell.

"Even if, as plaintiffs contend, the properties could have been sold for enough to pay the debts and leave a substantial surplus, defendant's failure to sell would not necessarily convict him of bad faith or breach of duty. It was not necessarily unreasonable for him to believe that the market would improve, and the court may well have concluded that plaintiffs shared that belief. There was no evidence that plaintiffs ever urged defendant to close the properties out at the best prices obtainable or that they were not satisfied to rely upon his judgment. It is true that they had no right to control defendant's action, but the fact that they made no protest against his failure to make sales indicates that they did not then question either his good faith or his good judgment. Furthermore, mistaken judgment is not necessarily unreasonable judgment and of course neither is the equivalent of bad faith.

"In regard to this issue of fraud and bad faith, which is raised as to all of defendant's acts in accepting and carrying out the trust, and particularly as against the court's finding 'That it is untrue that the defendant, Chas. Barnard, acting as trustee or otherwise under the contract herein, has failed, refused and neglected, or failed, refused or neglected, to properly perform and discharge his duty as trustee,' there are circumstances pointed out by plaintiffs which tend to cast some doubt on defendant's complete bona fides, and if the trial court had made findings in plaintiffs' favor on this issue, perhaps they could have been sustained. But on a consideration of all these matters and of the evidence as a whole we are of the opinion that the question was one for resolu-

tion by the trial court and that its decision in favor of defendant has adequate support in the evidence and cannot be disturbed by us. The record is so voluminous and consists so largely of documentary matter that it would unduly prolong this opinion to set forth even a synopsis of the evidence on this point; we have, however, considered everything to which our attention is directed by the parties, with the result already stated.

''Complaint is made that defendant was guilty of a breach of trust because he acquired the notes secured by the various trust deeds incumbering the property deeded to him, this being called the acquiring of an interest adverse to the trust, which is prohibited by section 2233 of the Civil Code. The trial court found that this was done 'pursuant to the contract' between the parties, and we think this finding is supported. Defendant had been the payee of notes amounting to $160,000 and secured by trust deeds of plaintiffs' land, and had sold them to others with his endorsement, so that upon the default which is recited in the contract he could be compelled by the holders to take them up. The motives inducing plaintiffs to execute the contract, as expressly recited in the formal agreement, were the promise of defendant not to humiliate or embarrass them by recording a notice of default under the trust deed securing the money he had advanced and their expectation that the proceeds of sales by defendant would probably be greater than could be obtained at foreclosure sales and greater than the amount required to pay their indebtedness. The agreement also mentions disbursements to be made by defendant in the care and management of the property. The defendant's letter transmitting the agreement stated that 'all my future investments will be for the care and protection of the property' and that 'it will be necessary to invest much additional capital before we can complete the entire matter.' If defendant was to avoid the recording of a notice of default on the trust deed running to himself, he must, of necessity, obtain the notes secured by it; and the purchase of notes secured by other trust deeds would be advisable and perhaps necessary to avoid the foreclosure sales, in accordance with the purpose of the contract.

''Plaintiffs further complain that defendant should have been required to assume the burden of proof on the accounting. At the trial defendant presented an account and

produced evidence in support of the items contained in it, such as tended to show that the items of receipts and disbursements were correct in amount and that the disbursements claimed were for proper purposes, and on this evidence the court made and stated in its findings a complete account, which differed in some respects from that submitted by defendant. Plaintiffs' point here is not, as we understand it, directed at the proceedings on the account so stated and does not involve the claim that evidence is lacking to support the findings as to the items included by the court in its account. The contention is, rather, that the defendant should have been required to justify affirmatively his failure to make sales of the trust property. On an accounting for a trust, the trustee does have a burden to establish the correctness of his accounts, but the rule does not go so far as plaintiffs claim. Their main reliance in support of the claim is *Purdy* v. *Johnson* (1917), 174 Cal. 521, 527 [163 P. 893]. That was an action against trustees for an accounting and other appropriate relief. The trustees presented an account to the court, and were cross-examined by the plaintiffs there in regard to the items in it, but apparently produced no evidence in its support. Of this procedure the court said: 'We think the course pursued was irregular . . . The entire trial was conducted upon the erroneous theory that the burden of proof was upon the beneficiary to point out the particulars in which the account was erroneous, and that she was bound to go forward and establish affirmatively the impropriety of the charges and credits which she assailed. Such is not the law . . . in fact, the burden is upon the trustees to prove that charges made by them are proper.' As a final statement of the rule in this respect the court declared, at page 531, 'that it is the duty of the trustees to support every item of their account, and that wherever they fail to support the correctness of a charge or credit by satisfactory evidence, the item must be disallowed.' All of this the defendant here did. This rule goes merely to items in the account. It does not require the trustee to anticipate and defend against charges of dereliction of duty and malfeasance which do not arise from anything on the face of his accounts but are grounded on other matters. It does not remove from a plaintiff who sues a trustee on charges of fraud and malfeasance the burden, which the law would cast on him in case of another defend-

ant, of proving his charges. The trustee is entitled to the benefit of the presumptions of regularity and good faith. (See *Estate of Vance* [1940], 141 Cal. 624, 626 [75 P. 323]; *Burke* v. *Maguire* [1908], 154 Cal. 456, 468 [98 P. 21].)

''Many other points are made and argued in the 762 pages of briefs filed herein, but they relate to the contention that there was a repudiation of the trust and to the weight of the evidence and a discussion of them here is not deemed necessary in a disposition of this appeal.''

The judgment appealed from is affirmed.