[Civ. No. 14681. Second Dist., Div. Three. July 26, 1945.]

W. A. CAMPBELL, Individually and as Executor, etc., Appellant, v. W. C. FOLSOM et al., Respondents.

Wm. H. Cree for Appellant.

Oliver O. Clark, in pro. per., and Robert A. Smith for Respondents.

FOX, J. pro tem.—By this action plaintiff individually and as executor of the estate of E. B. Campbell, deceased, seeks the removal of the defendants as trustees of that certain trust known as the E. B. Campbell Company. From a judgment in favor of the defendants, plaintiff appeals.

This trust was created in 1927 by the decedent, E. B. Campbell. He owned certain oil and gas leases on properties in the Signal Hill oil field. He conveyed to the trust these leases. The trust was divided into 100 units of beneficial interest; 50 of which were sold to the public; 48 of which were issued to the decedent; one to his son, the plaintiff herein, and one to defendant Folsom. These three were designated as the original trustees. In July, 1933, the decedent (who died in November of that year) and the plaintiff resigned as trustees and others were designated to take their places. Due to the resignation of such other trustees the defendants Clark and Pollard became trustees in September, 1941, and are still serving in that capacity. Defendant Folsom has continued to be and still is a trustee. He has been the manager of the trust for a number of years. He owns a part of one unit while neither of the other trustees has any investment in the trust. Plaintiff, in his individual capacity, owns one unit, while the estate which he represents owns 51 units. The remaining units are owned by a great number of other persons scattered over a large territory.

Plaintiff urges the removal of the defendants as trustees because of their alleged mismanagement and neglect of the trust estate and because of certain transactions with the trust by individual trustees which were either approved, or at least not disapproved, by the other trustees.

To determine whether these charges are well founded requires an examination of the provisions of the Articles of Agreement and Declaration of Trust, hereinafter referred to as the Declaration of Trust, for the purpose of ascertaining the extent of the authority conferred upon the trustees by that instrument. It is provided in section 4 of article I that "All investments and titles to all properties shall be made, held, managed and controlled by said Trustees and their successors, under this Declaration of Trust, for and on behalf of the said Trust Estate, absolute and free from all limitations save and except those specifically set out herein. . . ." Then follow ten paragraphs setting out at great length the powers

and authority of the trustees in conducting the business of the trust. The final paragraph of this section gives them authority "to deal with and use the Trust properties and moneys and to manage and conduct the Trust hereby created in any manner to said Trustees seeming fit. . . ." Section 6 of article I says, among other things, that it is "the purpose of the Trust Estate hereby created to vest full and absolute control of the Trust properties in said Trustees." The complete control of the trustees over the property of the trust estate is again indicated by the recitation in section 3 of article II that it is "fully understood that absolute control and dominion over said property so held in Trust, by said Trustees, is hereby created for and during the period of the natural lives of the said Trustees and their successors." This idea of complete control over the trust estate by the trustees is emphasized by the provision in section 1 of article III that unitholders shall not be entitled "to an accounting in the courts of law or in equity against said estate, its unitholders, Trustees, or its property or business operations of any kind, it being hereby distinctly understood and agreed that full and complete title, ownership, management, direction, control and dominion is vested in said Trustees, and their successors. . . ." It is also provided in the Declaration of Trust that the trustees may adopt by-laws for the conduct of the business of the company and may from time to time amend the same in any particular. It is further provided that if at any time a majority of the board of trustees should deem it advisable, the trust estate may be by them incorporated under the laws of any state for such an amount as to them may seem advisable. The trustees are also given authority to amend the Declaration of Trust provided such amendment does not change the purposes of the trust or in any way affect, modify or change the liability of the trustees or beneficiaries. No approval of or notice to the beneficiaries is required to make such amendment effective. Upon such amendment being executed by the trustees and recorded it "shall constitute conclusive proof of the facts thereby shown." Under the Declaration of Trust the trustees "have the power to fix the salary or wages of all officers and employees of the company from time to time, in their discretion." The trustees are also given authority to fix their own compensation. The term of office of the trustees is "for and during their natural lives, unless the same be terminated by death, voluntary resignation

312

or for breach of personal trust'' and no trustee shall be liable ''for any other than his own personal breach of trust.''

█ From the provisions of the Declaration of Trust herein mentioned it is unmistakably clear that the trustees are given an ''absolute discretion'' over the trust estate and the business thereof. The exercise, therefore, of this discretion ''cannot be reviewed or controlled by any other person or tribunal on consideration going to the soundness of the judgment exercised'' by them. (*Neel* v. *Barnard* (1944), 24 Cal. 2d 406, 417 [150 P.2d 177] ; see, also, Civ. Code, § 2269.) The exercise, however, of this discretion may be attacked for fraud or bad faith. (*Neel* v. *Barnard, supra.*)

An examination of the findings discloses that the court found ''That said defendants, as trustees of said trust, have conducted the business of said trust, and have managed and operated the properties of said trust honestly, and in good faith and within the scope of their powers as trustees of said trust as conferred by, and defined in, said declaration of trust, and in accordance with and in furtherance of the objects and purposes of said trust as defined in said declaration of trust, and in their conduct as trustees of said trust, said defendants have not exceeded their powers in respect thereof, as conferred by and defined in said declaration of trust, and have not abused the discretion vested in them as trustees of said trust'' and ''That each of said trustees at all times during his occupancy of the office of a trustee under said trust has been interested in the faithful performance by each of the trustees of his duties as a trustee of said trust, and in the proper and efficient management and operation of the business and properties of said trust.'' The court further found that none of the trustees had received ''from the funds of said trust any sum in excess of the reasonable value of the services rendered by them to and for said trust.'' The court also found to be untrue the allegations of the plaintiff charging misuse of the properties of the trust by the defendants and also charging that the defendants had permitted other enterprises in which they had a financial interest but in which the trust had no interest to improperly use the properties and facilities of the trust estate.

█ Plaintiff bases his charge of general mismanagement and neglect of the trust largely on the fact that since 1936 the income from the wells has declined substantially while

the expenses have not decreased in like manner. This conclusion, however, does not necessarily follow from the stated premises. Many items of operating expense such as wages, salaries, auditing and office supplies might well remain substantially constant even though production declined considerably. In this connection plaintiff complains that the costs of management, office salaries and miscellaneous office expense have never been reduced and that for the years 1940, 1941, 1942 and ten months of 1943 these salaries and office expenses amounted to $23,773.38. It is significant, however, that during this period living costs were increasing and there was pressure generally to increase wages and salaries. Still, these items of expense do not appear to have been increased by the trustees. Plaintiff emphasizes the fact that Folsom was paid a salary of $250 per month to manage the trust. It is to be noted that he was one of the three original trustees, the other two being the plaintiff and his father. By reason of his long connection with the trust he was no doubt familiar with its entire business. He, like the other defendants, did not receive any salary as a trustee. Under the Declaration of Trust the trustees had the power to "fix their own compensation, and the compensation of all other officers." It does not appear that the trustees acted either fraudulently or in bad faith in fixing the salary of Folsom, as manager of the trust, at $250 per month, or in not reducing it when the production of the wells declined.

Plaintiff also complains that Mrs. Pollard, the wife of trustee Pollard, is paid $87 per well monthly for keeping the books. She has held this position since 1933 and does all the office work and devotes her full time to it. Such a salary does not appear to be unreasonable for an experienced bookkeeper who also handles all the detail of the office and who is familiar with the business and its operations. The fact that some other person might be found who could keep the books, pay the bills, and send out the checks to the unitholders and who would be willing to render such service for less than the amount paid Mrs. Pollard does not establish bad management on the part of the trustees in keeping her. There are innumerable other items and details in operating such an office and familiarity with them, and long and apparently satisfactory service on the part of Mrs. Pollard are factors which the trustees could

properly consider in retaining her services and in determining her compensation therefor.

Plaintiff further complains of the payment to Mr. Pollard of $50 per month for assistance in pumping the wells. He had only been receiving pay for this service for "about a year" at the time of the trial, which was in January, 1944. It seems that he helped out when some additional assistance was needed in connection with the operations of the wells, thus making it unnecessary to call in another man. He was generally around there from 1 o'clock to 5 o'clock in the afternoons, and sometimes at night. He was also there about two Sundays a month. During this period of labor shortage, it was no doubt difficult to get an extra man for even a short period. Such payments do not indicate either fraud or bad faith on the part of the trustees.

Plaintiff criticizes the allowance of $45 per month to the Pollards for the use of their car. This allowance was by way of reimbursement. The trust did not own a car so the Pollard car was used to go to the post office, to the bank, to pick up the check from the company that brought the oil from these wells, to locate needed equipment and to deliver the same to the wells, as well as, no doubt, for many other purposes incident to the operations of the trust business. It does not appear that the allowance for the use of this car is unreasonable.

Plaintiff takes exception to the payment of $200 to Pollard for his services in connection with the sale of a compressor that belonged to the trust and the payment of $252 as rental for certain equipment which belonged to a concern in which he was financially interested and the purchase of certain rods for $320.05 from another company in which he was a stockholder. It appears that Pollard had been working on a sale of this compressor for a long time prior to his becoming a trustee and that he had spent considerable time and effort in that behalf. If he had not become a trustee it hardly seems that any question could be raised about this transaction, and undoubtedly the trial court so considered the matter. In any event, under the express provisions of the trust, no reason appears why Pollard might not properly have been compensated for his time in attempting to make the sale. It was for the trial judge to determine whether under the broad powers of the Declaration of Trust the trustees had authority to handle the transaction as they did and whether fraud or bad faith

existed. As to the rental item for the machinery and the purchase of the rods it is not claimed that there was any unfairness in either of these transactions. In passing upon these matters it must be borne in mind that under the express terms of the Declaration of Trust the trustees had authority ''to deal with and use the Trust properties and money and to manage and conduct the Trust . . . in any manner to said Trustees seeming fit. . . .'' It is not claimed that the trustor did not have the power to confer such broad authority on the trustees. In fact, the plaintiff was one of the original parties to the Declaration of Trust and his father, whose estate he here represents, and whose oil leases made up the trust property, was also a party to that instrument. There can be little doubt that they were personally responsible for the inclusion in the Declaration of Trust of the very broad and comprehensive powers which were vested in themselves as trustees. Those who purchased beneficial units in the trust did so with notice of the authority thus conferred on the trustees. (Incidentally, none of these latter parties are here complaining.) In view of this comprehensive authority it cannot be said that any of these transactions were not within the powers of the trustees. Hence, they may not be successfully attacked except upon the ground of fraud or bad faith, and in the view of the trial court neither of these grounds was established.

As to trustee Clark, who is an attorney, plaintiff's first complaint is that he acquiesced in and approved the various transactions hereinbefore discussed that Pollard had with the trust, and that having done so he is equally culpable with Pollard. Since, however, none of these transactions establish any culpability on the part of Pollard, no odium can attach to Clark by reason of his approval.

Plaintiff's second complaint against Clark is that although he receives no salary as a trustee he performs all the legal services which the trust requires and that he, along with the other trustees, determines whether legal services are necessary for the best interest of the trust, and also the reasonable value thereof when such services are rendered. Appellant, however, in his brief states that he ''makes no claim that the various fees received by the trustee Clark for his legal services were excessive or that the services performed were not necessary.'' This concession makes it unnecessary to consider this point

further in view of the broad powers conferred upon the trustees in the Declaration of Trust as heretofore noted.

Plaintiff's first complaint against trustee Folsom is that he, like trustee Clark, acquiesced in and approved the alleged improper acts of Pollard in his transactions with the trust. What we have said about trustee Clark in this respect applies equally to trustee Folsom.

Plaintiff further places a large share of the blame for the alleged excessive cost of operation of the wells on Folsom since he is manager of the trust. We have, however, heretofore discussed these various items in sufficient detail.

It is to be borne in mind that the trustees are "entitled to the benefit of the presumptions of regularity and good faith." (*Neel* v. *Barnard, supra,* 24 Cal.2d 406, 421.) These, together with the inferences that the trial court could reasonably draw in favor of the judgment, furnish sufficient evidentiary support for the findings of the court that the trustees have managed and operated the properties of the trust "honestly, and in good faith," and "have not abused the discretion vested in them." Since no "breach of personal trust" appears to have occurred, no basis is established for the removal of the defendants as trustees in view of the very broad powers conferred on them in the Declaration of Trust. Because of these broad powers the authorities relied on by the appellant are not here controlling.

The judgment is affirmed.

Desmond, P. J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 20, 1945.