[Civ. No. 15558. Second Dist., Div. Three. June 18, 1947.]

Estate of CHARLES A. CANFIELD, Deceased. TITLE INSURANCE AND TRUST COMPANY, Respondent, v. PEARL S. CANFIELD, Appellant.

444

R. M. J. Armstrong, J. A. Pardini, Maidman & Plattner and Henry A. Plattner for Appellant.

Julius V. Patrosso for Respondent.

Walter H. Robinson as Amicus Curiae on behalf of Respondent.

SHINN, Acting P. J.—This is an appeal by Pearl S. Canfield, a judgment creditor of Charles O. Canfield, the principal beneficiary of a testamentary, discretionary, spendthrift trust, from an order settling the 24th account current of the respondent trustee and overruling appellant's objection thereto. Appellant objects to the change made by respondent in the 24th year in its allocation of trust net income between the two beneficiaries, the said Charles Canfield, and Laura Pierce, his daughter. Previously it had been the practice of the respondent to allocate to the two beneficiaries sums for their support and then to allocate to Charles Canfield the balance of the trust net income. Under section 859 of the Civil Code, appellant's lien attached to this balance upon its allocation to Charles Canfield. (*Canfield* v. *Security-First Nat. Bank,* 13 Cal.2d 1, 31 [87 P.2d 830].) In the 24th year, however, respondent allocated to Canfield merely the sum which had theretofore been judicially determined to be necessary for his support, and allocated to Pierce the entire balance of the trust net income. This change in allocation prevented appellant's lien from attaching; consequently appellant objects thereto upon the ground that respondent abused its discretion.

The trust here involved was created by the will of Charles Canfield's father. Under this will, $900,000 was bequeathed to the original trustee, a bank, for the benefit of Charles Canfield and his two children, only one of whom, Laura Pierce, now survives. The decree of partial distribution of March 30, 1914, embodies practically verbatim the provisions of the will relating to this trust. The decree directs the trustee to use and apply the net income of the trust as follows:

"(a) Out of said income to pay, in monthly installments, twelve hundred dollars ($1200.00) per annum only to and into the proper hands of said Charles O. Canfield, a son of said Charles A. Canfield, deceased, and not by way of anticipation, nor to any assignees of my said son, nor to or upon any order which my said son shall give, whether such assignment

or order be the voluntary contractual act of said Charles O. Canfield or be made pursuant to or by virtue of any legal process in attachment, execution, bankruptcy, or otherwise.

"(b) Out of said net income, in addition to said annual income of twelve hundred dollars ($1200.00), to pay and apply, as said trustee shall deem advisable in the judgment of its president or general manager for the time being, and through such agencies as it may select, and from time to time, whatever sums said trustee may deem proper for the support, maintenance and education of Orville and Laura Elaine Canfield, grandchildren of said Charles A. Canfield, deceased, and children of said Charles O. Canfield, in a manner suitable to their station in life, during their respective lives. This provision shall be given a broad interpretation, to the end that both said grandchildren of said Charles A. Canfield, deceased, shall be given liberal educations, including travel abroad if deemed expedient in the judgment of the said trustee exercised by its said officers for the time being. Said trustee shall, with respect to such expenditures, counsel and advise with Florence E. Whitney and Daisy Canfield Danziger, daughers of said Charles A. Canfield, deceased, or in case of their deaths, with surviving other daughters or daughter of said deceased.

"(c) If, in the judgment of said trustee, to be exercised by its present or general manager for the time being, said Charles O. Canfield, son of said Charles A. Canfield, deceased, shall hereafter prove himself worthy of being entrusted with the expediture of a larger annual income or allowance than that above given him, said trustee may, in such event, at any time, and in such proportions and at such time as to payments as it shall deem advisable in the discretion of its said officers, increase the said allowance and pay over such increase to said Charles O. Canfield up to the full limit of the net income of the said trust estate and unexpended income which may have accumulated in the hands of the trustee, notwithstanding the provision above made as to payments out of the income for the maintenance and education of said Orville and Laura Elaine Canfield, grandchildren of said Charles A. Canfield, deceased.

"(d) The foregoing provisions as to the application of the income of said trust estate are intended to commit to said trustee absolute discretion as to, and full power or control over, the application of all of the net income of said trust estate beyond the said sum of twelve hundred dollars ($1200.00) per annum."

Analysis of the quoted terms of the trust governing the allocation of the net income of the trust is instructive. Paragraph (a) directs the trustee to pay annually to Charles Canfield $1,200 in monthly installments. Paragraph (b) directs the trustee to pay, in addition to the $1,200 allowance, whatever sums it may deem proper for the support and education of the two children of Charles Canfield. Paragraph (c), however, permits the trustee, in the exercise of its judgment as to the increased trustworthiness of Charles Canfield, to ignore paragraph (b) and to pay to Charles Canfield increased payments up to the entire net income of the trust. Paragraph (d) states that paragraphs (a), (b) and (c) are intended to commit to the trustee absolute discretion as to the application of the net income of the trust, aside from the mandatory annual allowance of $1,200 to Charles Canfield.

■ This absolute discretion as to the allocation of the net income of the trust in excess of $1,200, vested in the trustee by paragraph (d), was expressly recognized in the findings, conclusions, and order of the probate court settling the 19th account current of respondent's immediate predecessor as trustee, and instructing it pursuant to section 1120 of the Probate Code. Such order, having become final, is conclusive upon all persons in interest, including appellant. (Prob. Code, § 1123; *Security-First Nat. Bk.* v. *Superior Court* (1934), 1 Cal.2d 749, 756 [37 P.2d 69].) ■ Appellant, however, contends that respondent could not succeed to the discretion entrusted to the original trustee. But the order of appointment of respondent's immediate predecessor as trustee, made on March 28, 1940, expressly endowed it with all the powers conferred by the terms of the trust and declared in the already partly-quoted decree of partial distribution. That such an order clothed respondent's immediate predecessor with all the discretionary powers of the original trustee has long been settled in this state. (*Fatjo* v. *Swasey,* 111 Cal. 628, 635-636 [44 P. 225].) Respondent succeeded to all the powers of its immediate predecessor as trustee upon the merger of that predecessor into respondent in 1942. (Bank Act, Deering's Gen. Laws, 1937, ch. 652, pp. 238-239.) Moreover, independent of the order, normally the powers of the original trustee attach to the office rather than to the person of the trustee unless the trust provides otherwise. (Restatement, Trusts, § 196.) In the absence of specific language one way or the other, the question whether the discretion is personal or ex officio turns upon the intention of

the trustor, as disclosed by the terms of the trust. (Bogert, Trusts, § 553; note 126 A.L.R. 931.) Where, as here, the original trustee is an institution and its discretion is expressly delegated to "Its president or general manager for the time being," the inference is plain that the trustor intended the discretion of the trustee to be ex officio. (*In re Boutwell's Estate*, 112 Vt. 159 [22 A.2d 157, 160]; Scott, Trusts, § 196.) Accordingly, we hold that respondent, upon its assumption of the trusteeship, succeeded to the discretion entrusted to the original trustee.

█ The interest which appellant here asserts in the allocation of the net income of the trust arises solely from the judgment in her favor entered on September 27, 1939, following the retrial ordered by our Supreme Court in the Canfield case cited at the outset of this opinion. The provisions of that judgment therefore warrant close examination. It specifically provides that: (1) the size of the allocation to Charles Canfield is a matter resting in the discretion of the trustee and consequently outside of the control of the court; (2) appellant's equitable lien comes into existence only upon the allocation by the trustee to Charles Canfield of income in excess of $14,500, the amount judicially determined to be necessary for his support, and appellant's lien then attaches to this surplus income; (3) appellant's equitable lien shall not interfere with or impair the exercise of the trustee's absolute discretion as to the size of its allocation to Charles Canfield; (4) appellant's equitable lien shall not attach to or affect the amount of income which the trustee may allocate or pay to or for the other beneficiary, Laura Pierce. It would seem from a consideration of these enumerated provisions that the court, in framing that judgment, which defines and limits the extent of appellant's lien upon and interest in the income of this trust, was extremely careful to protect to the utmost the absolute discretion vested in the trustee by paragraph (d).

To sum up, paragraph (d), the order of appointment of respondent's immediate predecessor as trustee, the order settling the 19th account, and the judgment in which appellant's lien is defined, unite to compel the conclusion that respondent's discretion as to the annual allocation of net income of the trust in excess of $1,200 has always been absolute.

Appellant contends that respondent has abused this absolute discretion in several respects. She asserts that in the distribution of the entire net income of the trust each year,

there being no provision for accumulation, respondent may not allocate to Laura Pierce under paragraph (b) more than the sum reasonably necessary for her support in her station in life, her years of education being long since past. She points out that in the 24th year Laura Pierce made no demand for an increase in her allocation and that respondent had no discussion with her about it. From these facts she infers that respondent made no inquiry into the relevant circumstances bearing upon the requirements of Laura Pierce as a proper exercise of its discretion required it to do. She argues that respondent breached the terms of the trust in the manner indicated and that it made its allocations of income to the two beneficiaries in a thoroughly arbitrary and capricious manner, in the mistaken belief that its discretion therein was uncontrollable by any court. Appellant also alleged in her objection that the allocation was made in collusion with certain named members of the Canfield family. She claims that she was prevented from introducing evidence in support of this allegation by the trial court's erroneous determination that respondent's discretion was not subject to its control.

To determine whether respondent has abused its absolute discretion in any of the specified particulars requires a delineation of the scope of that discretion. Its outer limits are set by the terms of the trust (*Ainsa* v. *Mercantile Trust Co.*, 174 Cal. 504, 511 [163 P. 898]), namely, paragraphs (a) through (d). Appellant contends that paragraph (b) imposes by implication a ceiling on the amount that may be allocated to Laura Pierce. This ceiling is the amount reasonably necessary for her support in her station in life. We cannot agree. Paragraph (c) negatives the idea that this trust is, so far as Laura Pierce is concerned, one for her support, since it permits the trustee in its discretion to ignore her in its allocation of income. Moreover, such a maximum limitation upon the amount that could be allocated to Laura Pierce would interfere with and impair the exercise of the trustee's discretion as to the size of the allocation to Charles Canfield. What income the trustee does not allocate to Laura Pierce, it must allocate to Charles Canfield. Yet paragraph (c) requires that the size of Charles Canfield's allocation be governed not by what is left after Laura Pierce's allocation has been made, but by the trustee's judgment as to the trustworthiness of Charles Canfield, the principal beneficiary of the trust. Finally, the plain and unambiguous language

of paragraph (d), setting forth the absolute discretion of the trustee as to the allocation of income and containing a single express limitation thereon, is utterly at variance with any such implied limitation upon that discretion. The allocation to Laura Pierce was not unauthorized.

There remains the question whether respondent abused its discretion, although it acted within the terms of the trust. A trustee exercising discretion abuses it if he exercises it in bad faith or goes beyond the bounds of reasonable judgment. (Restatement, Trusts, § 187, Comment *e*; Bogert, Trusts, § 560.) This general proposition is subject to the established exception that where absolute discretion has been conferred, any unsoundness in the trustee's judgment cannot be deemed to be an abuse of discretion. (Civ. Code, § 2269; *Neel* v. *Barnard*, 24 Cal.2d 406, 417 [150 P.2d 177]; *Campbell* v. *Folsom*, 70 Cal.App.2d 309, 313 [160 P.2d 906]; Restatement, Trusts, § 187, Comment *j*; Scott, Trusts, § 128.3.) But the basic inquiry, whenever the exercise of a trustee's discretion, absolute or otherwise, is challenged, is always whether the trustee acted in the state of mind contemplated by the trustor. (Restatement, Trusts, § 187, Comment *j*; Scott, Trusts, § 187.) The primary purpose of the trustor in setting up the trust before us undoubtedly was to prevent the dissipation of the trust property and the income therefrom among the creditors of his son, Charles Canfield, the principal beneficiary of the trust. To this end not only were elaborate spendthrift provisions incorporated, but the allocation of all the annual net income of the trust aside from $1,200 was placed within the absolute discretion and control of the trustee. In short, the trustor established not merely a spendthrift trust but a discretionary trust as well. For the trustee to allocate the income between the beneficiaries so as to prevent the lien of a creditor of the son from attaching is exactly what the trustor contemplated that the administrator of his trust should do. The use of the words "absolute discretion" plainly indicates that the trustor intended that the judgment of the trustee exercised in good faith should control. A court should not substitute its judgment for the one chosen by the trustor. (*Moxley* v. *Title Ins. & Trust Co.*, 27 Cal.2d 457, 464 [165 P.2d 15]; *Estate of Marré*, 18 Cal.2d 184, 190 [114 P.2d 586].) The absolute discretion of the trustee, exercised in good faith as shown below, is not subject to control by the court as to its reasonableness in the allocation of income.

Appellant failed to prove any of the particulars alleged by her as a basis for the charge that the trustee acted in bad faith. It appeared that during the 24th year, Laura Pierce had no discussion with respondent about her allocation and made no demand upon respondent for an increase in her allocation, but these facts do not establish appellant's contention that respondent failed to make inquiry into the relevant circumstances before increasing her allocation. The record shows that pursuant to paragraph (b), respondent informed two of the three surviving daughters of the trustor of its proposed action. Furthermore, in the years immediately preceding the one under review Laura Pierce had persistently sought increases in her allocation by litigation and otherwise. (See *Miller* v. *Pierce*, 66 Cal.App.2d 126 [152 P.2d 24].) The trust officer of respondent in charge of this trust testified at the trial but appellant failed to avail herself of this opportunity to examine him exhaustively concerning the basis for the trustee's decision to change the amounts of the allocations made to the two beneficiaries. Finally, the record is utterly devoid of evidence suggesting collusion between respondent and certain members of the Canfield family, as charged by appellant. Appellant's claim that the trial judge prevented her from offering evidence in support of this charge is completely without foundation. Early in the trial the judge expressed himself as willing to hear any such evidence, and yet no offer of it was ever forthcoming from appellant.

The burden of proof of the charge of abuse of discretion was clearly on appellant. (Code Civ. Proc., § 1981.) Respondent trustee is entitled to the benefit of presumptions of regularity and good faith on its part. Consequently, it was not required to anticipate and defend against charges of dereliction of duty and malfeasance. Like any other plaintiff, appellant had the burden of proving her charges. (*Neel* v. *Barnard, supra*, 24 Cal.2d 406, 420-421.) This she failed to do. We are of the opinion that the findings and conclusion of the trial court to the effect that respondent acted in good faith and did not abuse its discretion are amply supported by the evidence.

It seems clear to us that appellant is here seeking to do indirectly through control of the discretion of the trustee what she may not do directly. In a discretionary trust where the trustee has absolute discretion, as here, in the allocation of the trust net income between the two beneficiaries (aside from a negligible portion thereof), each beneficiary has at

most a mere expectancy. (Bogert, Trusts, § 226.) Consequently, neither the beneficiaries nor their creditors can directly compel any allocation to any particular beneficiary. (*Canfield* v. *Security-First Nat. Bank, supra,* 13 Cal.2d 1, 31; Restatement, Trusts, § 155.) No basis exists, therefore, for permitting a creditor to accomplish this same end indirectly through control of the trustee's discretion. (*Herzog* v. *Commissioner of Int. Rev.* (CCA 2, 1941), 116 F.2d 591, 594; Scott, Trusts, § 155.1; Griswold, Spendthrift Trusts, 2d ed. 1947, § 428.) The position of appellant in this suit is quite different from the one she occupied in the Canfield case just cited. There our Supreme Court held that the immunity enjoyed under the terms of this trust by an allocation of trust net income to a debtor beneficiary does not extend as against actions brought under Civil Code, section 859, by creditors of that particular beneficiary beyond a sum reasonably necessary for that beneficiary's support (p. 17). Consequently, notwithstanding the absolute discretion of the trustee, the payment of sums allocated is controlled by this statutory limitation. ■ But by its terms, Civil Code, section 859, operates only in favor of creditors of the beneficiary whose surplus trust income is sought and not in favor of creditors generally or creditors of other beneficiaries of that trust. Appellant is not a creditor of Laura Pierce, but of Charles Canfield. Accordingly, no basis exists for appellant's attempted assumption with respect to Laura Pierce's trust income allocation of the beneficial status accorded her as a creditor of Charles Canfield's with respect to his allocation.

Appellant's objection to finding No. II, which negatives her allegation that she has a lien on allocations to Charles Canfield in excess of $14,500, is not valid. The finding clearly relates only to the allocations made during the particular accounting period as shown by the account.

The order settling the 24th account of respondent trustee is affirmed.

Wood, J., and Kincaid, J. pro tem., concurred.

A petition for a rehearing was denied July 18, 1947, and appellant's petition for a hearing by the Supreme Court was denied August 14, 1947. Shenk, J., and Traynor, J., voted for a hearing.